UNITED STATES of America,
Plaintiff–Appellee,

v.

Timothy Wade FORREST,
Defendant–Appellant.

No. 92–4132.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 8, 1993.

Decided March 2, 1994.

Dana M. Peters (briefed), Office of the U.S. Atty., Columbus, OH, for plaintiff-appellee.

Victor D. Merullo (briefed), Merullo, Reister & Swinford, Columbus, OH, for defendant-appellant.

Before: MARTIN and BOGGS, Circuit Judges; and JOINER, Senior District Judge.*

PER CURIAM.

Timothy Wade Forrest appeals his convictions for distribution of cocaine base and conspiracy to distribute and to possess with intent to distribute cocaine base. For the reasons discussed herein, we affirm.

**I**

On December 6, 1991, agents of the Bureau of Alcohol, Tobacco, and Firearms arrested Forrest during the execution of a federal search warrant at 825 South Ohio Avenue in Columbus, Ohio, for distribution of and conspiracy to distribute crack cocaine. Before the execution of the warrant, the ATF had used a confidential informant to conduct three controlled, undercover buys of crack cocaine at that address. The informant made two buys directly from Forrest while an associate of Forrest held a firearm on the informant. During one buy, Forrest pulled the crack cocaine from his pants; at the other buy, he went into the living room and returned with the cocaine. The informant made the third buy from an associate of Forrest.

In executing the search warrant, ATF agents and Columbus police entered through the back door of the house, while other officers covered the front. Forrest and Doris Featherstone attempted to flee the house but were stopped. Both were searched and (according to the agents) given *Miranda* warnings. Forrest told an agent that Featherstone was his common-law wife, but that he lived elsewhere. Featherstone told an agent that she was the sole lessee of the house, that Forrest was her boyfriend, and that he had lived with her off and on for five months. She later denied making these statements.

Agents found previously-recorded "buy" money in Forrest's sock. Forrest was vomiting during the search, indicating to agents that he had swallowed crack cocaine. No firearms were found in the house, but agents found a baggie with crack in it on a chair, a baggie with crack behind a picture in the living room, and crack on the refrigerator and in a closet. When agents searched behind the picture, Forrest became animated, suggesting that he knew that the crack was there. The amount of crack cocaine, more than seventeen grams, was too large for personal use. Featherstone testified that Forrest had been sitting on the chair on which a baggie of crack was found. A small scale was found. Agents also found a photograph of Forrest holding Featherstone's child in the house and a dry cleaning claim ticket in his name.

On December 19, 1991, a federal grand jury indicted Forrest on two counts of violating federal narcotics laws: (1) conspiracy to distribute and to possess with intent to dis-

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

tribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A jury convicted Forrest on both counts. Forrest appeals the convictions on the grounds that the evidence was insufficient to convict him and that prejudicial trial testimony regarding his criminal history warranted the granting of a mistrial.

## II

■ In his appeal, Forrest argues that the district court erred in denying his motion for judgment of acquittal on the ground that the verdict was contrary to the weight of the evidence and not supported by substantial evidence. The standard of review for claims of insufficient evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Phibbs*, 999 F.2d 1053, 1063 (6th Cir.1993). The record indicates sufficient evidence upon which a rational juror could find Forrest guilty of distribution of and conspiracy to distribute crack cocaine.

### A. Drug Conspiracy

■ Forrest was convicted of conspiracy to distribute and to possess with intent to distribute crack cocaine under 21 U.S.C. §§ 841(a)(1) (manufacture, distribution, or dispensing of controlled substance unlawful) and 846 (conspiracy to violate drug laws). The elements of a drug conspiracy are (1) that an agreement to violate the drug laws existed; and (2) that each conspirator knew of, intended to join, and participated in the conspiracy. *Phibbs*, 999 F.2d at 1063 (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir.1990). "No formal or express agreement is necessary to establish a conspiracy under § 846." *Phibbs*, 999 F.2d at 1063 (citing *United States v. Hughes*, 891 F.2d 597, 601 (6th Cir.1989)). A tacit or mutual understanding among the parties is sufficient. *Ibid.* Proof of the elements may

be by direct or circumstantial evidence. *United States v. Meyers*, 646 F.2d 1142, 1143–44 (6th Cir.1981) (citing *United States v. Luxenberg*, 374 F.2d 241, 250 (6th Cir. 1967)).

Forrest argues that the United States failed to meet these burdens. He asserts that the record contains no evidence that he possessed or sold crack, other than the "word of an unreliable confidential informant." He argues that his fingerprints were not on the baggies and that no agent saw him with crack on or near him or saw him deal drugs. He further argues that no agents had any direct knowledge of any agreements he may have had with others, so there is no proof of conspiracy. Forrest attempts to undermine the credibility of the informant's testimony— upon which the government relies—by noting that the informant testified that guns had been present, yet no guns were recovered.

The evidence presented at trial was more than sufficient to support Forrest's conviction for conspiracy to violate the drug laws. The informant testified that Forrest sold crack while associates would hold firearms (in order to protect the operation). The informant testified that people kept coming and going from the house to buy crack from Forrest. The informant also testified that he himself made two controlled buys of crack from Forrest. He testified that he made a third controlled buy, from Forrest's associate, whom the informant had seen at the house before; he testified that the same gun was present at each of the controlled buys. An agent testified that he found the recorded "buy" money from the third sale in Forrest's sock. A jury could infer an agreement and knowledge of and participation in a conspiracy to violate the drug laws from this evidence. The agreement was tacit, but such a tacit or mutual understanding is enough: Forrest's associates protected the operation while he made the sale; this indicates that they were working together in violating the drug laws. A jury could infer from the informant's testimony regarding the third buy that Forrest had delegated the sales duty, so that when the drug sale was made, the money was transferred to Forrest; this

indicates an agreement to violate the drug laws and participation by Forrest.

■ Also, the jury could weigh the credibility of the informant's testimony as to whether the same firearms were present. Any error, if error there was, in the informant's testimony as to the guns goes to the quality of the informant's evidence and not to its sufficiency; credibility of witnesses is a matter for the trier of fact.

There was other evidence of a conspiracy. A baggie of crack was found in the chair in which Featherstone says Forrest was sitting at the time of the raid. Crack was found in the house in quantities too large for personal consumption, suggesting drug trafficking; the scale and large amount of cash found on Forrest similarly suggest drug trafficking. Forrest's reaction to the discovery of the crack behind the picture, to which the agents testified, is circumstantial evidence of his knowledge of its existence. The informant's testimony that Forrest went into the living room for the second controlled buy indicates his knowledge of and control over Featherstone's house in carrying out his drug conspiracy. Similarly, the photograph, laundry claim ticket, and Featherstone's statements to the agent all suggest that Forrest had control of the house and therefore possession of the crack. Finally, Forrest's attempt to flee and his vomiting, which suggests he swallowed crack, according to one agent's testimony, indicate a guilty mind.

Thus, given the testimony at trial and evidence found at the house, a rational juror could find Forrest guilty of conspiring to violate the drug laws.

### B. Drug Distribution

■ Forrest was also convicted of unlawful distribution of crack cocaine under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The essential elements of the offense are that a person knowingly and intentionally distributes or possesses with intent to distribute a controlled substance. *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989). As with the conspiracy conviction, the evidence more than adequately supports Forrest's conviction for distribution of crack.

■ Forrest argues that no drugs were ever found on his person. However, the informant testified that he made two controlled buys of crack from Forrest. From this testimony, a rational juror could find him guilty of distributing crack.

■ Forrest also argues that for a conviction based on circumstantial evidence to stand, every reasonable hypothesis of innocence must be excluded. His characterization of the law, however, is incorrect. A jury may choose from among reasonable constructions of the evidence in a drug prosecution and need not exclude every reasonable hypothesis except that of guilt. *United States v. Martinez,* 981 F.2d 867, 873 (6th Cir.1992) (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1874, 123 L.Ed.2d 493 (1993). Thus, a purely circumstantial case need not be supported by evidence that is irreconcilable with every reasonable theory of innocence. *United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984) (citing *United States v. Prieur,* 429 F.2d 1237, 1238 (6th Cir.1970)), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). Further, the informant's testimony provides direct evidence, not just circumstantial evidence, of Forrest's guilt. There was thus sufficient evidence for a rational juror to find Forrest guilty of distribution of crack cocaine.

### III

■ Forrest also contends that the district court erred in not granting his motion for mistrial. The standard of review for a decision not to grant a mistrial is abuse of discretion. *United States v. Chambers,* 944 F.2d 1253, 1263 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). The primary concern is fairness to the defendant. *Ibid.* We conclude that the district court did not abuse its discretion in denying the motion for mistrial.

The basis for Forrest's motion for mistrial was a Government witness's statement regarding Forrest's criminal history. The statement was made on direct examination during the rebuttal portion of the Government's case under the following circum-

stances. During the Assistant United States Attorney's cross-examination of Featherstone, an objection by defense counsel and a sidebar conference were prompted by the Assistant United States Attorney's question, "Didn't you tell the agent that [Forrest] had been over there [at Featherstone's house] off and on for about five months, ever since—." Defense counsel sought to prevent the introduction of testimony regarding Forrest's criminal record—specifically, testimony of his release five months before from state prison, where he had been incarcerated for robbery—as it was prejudicial and Forrest had not taken the stand. The court agreed with defense counsel and directed that Featherstone's alleged statement regarding Forrest's previous incarceration be "excised." The court also instructed the Assistant United States Attorney to warn the ATF agent not to testify, during rebuttal, to Forrest's criminal past.

However, when the agent was called on rebuttal to impeach Featherstone's testimony and was asked by the Government to relate the substance of his interview with Featherstone, he "blurted out"[1] that Featherstone had "stated that approximately five months ago, Tim Forrest had been paroled from the state penal institution for robbery." Defense counsel objected, and the court, sustaining the objection, admonished the jury to disregard those remarks.[2]

In addition, on cross examination of the agent, defense counsel, apparently trying to impeach the agent on his statement that Featherstone told him that Forrest had been living with her off and on for five months, asked the agent, "Do you remember answering a question about Timothy Forrest living at [ ] 825 South Ohio? ... The question specifically was what you heard Doris Featherstone tell you about Timothy living at 825 South Ohio. Do you remember what you answered ...?" The agent replied, "Something to the effect that she said that he had resided there on and off since—for the past five months, when he was released from a penal institution for robbery." After his ex-

amination, defense counsel sought a mistrial, which the court denied. The court at that time offered another limiting instruction, but defense counsel declined, on the ground that "it would just do further damage to even mention it."

This case appears similar to *United States v. Hernandez*, 873 F.2d 925, 928 (6th Cir. 1989), in which this court determined that a mistrial was not warranted where an improper reference to an unrelated arrest of defendant was unsolicited; the government's line of questioning reasonable; the limiting instruction immediate, clear, and forceful; no bad faith evidenced by the government; and the reference itself only a small part of the evidence against defendant. *United States v. Bowers*, 739 F.2d 1050, 1055 (6th Cir.) (per curiam), *cert. denied*, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984), noted that lack of deliberateness, a clear and forceful limiting instruction, no bad faith, and testimony amounting to only a small portion of the government's case, would warrant denying a mistrial. *See also United States v. Steele*, 727 F.2d 580, 587–88 (6th Cir.), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984) (unsolicited and inadvertent statement that defendant had served time in a South American jail not grounds for mistrial where there was a clear and positive instruction to the jury to disregard the statement); *United States v. Ushery*, 968 F.2d 575, 580 (6th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 392, 121 L.Ed.2d 301 (1992) (witness's statement that defendant was a convicted felon in response to the prosecutor's request that the witness explain what he meant by his statement that defendant had "a record" not grounds for mistrial where curative instruction given and testimony only a small part of the total evidence against defendant).

Several of the factors from *Hernandez* and *Bowers* definitely militate in the Government's favor here. The judge's admonition was clear and immediate after the agent's initial "blurted" statement. Juries are presumed to understand and follow such di-

---

1. *Appellee's Brief* at 14.

2. The court told the jury: "Ladies and gentlemen of the jury, I am going to instruct you to disre-

gard that comment and not consider it for any purpose."

rections from the court. *United States v. Sivils*, 960 F.2d 587, 594 (6th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992); *United States v. Chambers*, 944 F.2d 1253, 1263 (6th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). The judge also offered another admonition after the statement on cross-examination, which defense counsel declined. There was also ample additional evidence on which to rest a conviction, as discussed above.

However, some factors support Forrest's motion for mistrial. While the Government did not directly solicit the offending information here and its line of questioning was reasonable, the agent's statement directly contravened the judge's specific warning, which he had directed the prosecutor to convey to his witness. In light of this circumstance, the agent's "blurting" seems anything but accidental, notwithstanding defense counsel's gentlemanly concession that "I am not saying it was bad faith, I am saying it came out." [3]

In addition, defense counsel's cross-examination related to the agent's previous testimony at a hearing on December 12, 1991. In that testimony, the agent had made certain statements about Forrest's residence and only later mentioned the fact of his previous prison term. Defense counsel's question on cross-examination at trial was narrowly focused on the first part of that testimony, and the witness was not being faithful to his duty in again maneuvering himself into territory that had been specifically forbidden to him.

In light of these circumstances, it is a close question as to whether the machinations of the agent-witness require a mistrial. On balance, we believe that the clear admonition by the judge and the ample other evidence of guilt determine that a mistrial is not mandated. Nevertheless, we caution both prosecutors and law enforcement witnesses that they needlessly jeopardize warranted convictions if they connive at "blurting out" inappropriate but conveniently useful details during testimony. As our cases indicate,

where deliberately injected testimony concerning unrelated offenses prejudices the defendant, we will not hesitate to reverse verdicts that may have been reached because of the potential influence of such statements. *See, e.g., United States v. Blanton*, 520 F.2d 907, 909–10 (6th Cir.1975); *United States v. Nemeth*, 430 F.2d 704, 706 (6th Cir.1970). We remind all prosecutors that their "duty to the public and the defendant obliges [them] to seek justice rather than convictions." *United States v. Perry*, 512 F.2d 805, 807 (6th Cir.1975).

## IV

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

3. We are also concerned about the Assistant United States Attorney's question to Featherstone, in which he himself appears about to mention Forrest's release from prison. *J.A.* at 92.