**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jimmy M. CRUSE Defendant–**
**Appellant.**

No. 01–5874.

United States Court of Appeals,
Sixth Circuit.

Feb. 7, 2003.

Before COLE and CLAY, Circuit Judges; and BERTELSMAN, District Judge.*

CLAY, Circuit Judge.

Defendant Jimmy M. Cruse appeals from his conviction on crack cocaine charges, as well as his sentence. Defendant claims the following: 1) his written statement to police should have been suppressed; 2) a witness' statement about another charge against Defendant unfairly prejudiced his right to a fair trial; 3) the district court's exclusion of a defense witness violated Defendant's Sixth Amendment Compulsory Process Clause rights; and 4) the district court's failure to insure

* The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

that Defendant and his attorney had discussed the presentence investigation report before the sentencing constituted reversible error.

For the following reasons, we **AFFIRM** Defendant's conviction but **VACATE** Defendant's sentence and **REMAND** the case to the district court for a new sentencing hearing.

## I.  FACTS

### Arrest and Interrogation

In November 1999, Demetrius Blakemore became a paid informant for the Jackson Police Department in Tennessee. As part of his services, Blakemore allowed the police to wire his telephone. He then had a taped telephone conversation with Defendant, during which they discussed a crack cocaine purchase. The police provided Blakemore with money, and on February 16, 2000 and March 2, 2000, Blakemore purchased, respectively, 70.7 and 23.2 grams of cocaine base from Defendant while the police personally monitored and made audio and videotapes of the transactions.

On April 25, 2000, Defendant's vehicle was pulled over on suspicion of a robbery. During this stop, the police searched Defendant's car, discovered marijuana, and arrested him. At the police station, he was interrogated by Sergeant Leslee Hallenback, a thirteen-year veteran of the Jackson Police Department, about the two controlled drug buys with Blakemore. During the course of this interrogation, Defendant signed a form waiving his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and he signed a separate statement confessing to selling crack cocaine. On August 21, 2000, a federal grand jury in the Western District of Tennessee indicted Defendant on two counts of distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same, in violation of 18 U.S.C. § 2. Defendant pleaded not guilty to the charges.

### The Suppression Hearing

Defendant moved to suppress the statement he gave while in custody, arguing that it was obtained through coercive measures in violation of his Fifth Amendment rights. The district court conducted an evidentiary hearing on the motion. At the hearing, Sergeant Hallenback testified on direct examination that she read Defendant his *Miranda* rights and that he signed a waiver form, which Hallenback and Lieutenant Patrick Willis signed as witnesses. Defendant also placed a checkmark next to each provision in the waiver form as it was read aloud to him by Hallenback. She further testified that Defendant never invoked his rights to silence or counsel and that he was very cooperative and appeared coherent. Hallenback denied threatening Defendant with life imprisonment or promising any sort of benefits to Defendant for his cooperation. On cross examination, Hallenback acknowledged telling Defendant that she anticipated bringing him into federal court but denied telling him that he could receive a sentence of ten years to life in prison. She also acknowledged informing Defendant about the possibility of a downward departure motion, lowering his sentence if he cooperated, pursuant to United States Sentencing Guidelines § 5K1.1 ("5K1.1 motion"), but that she told him such a motion was at the United States Attorney's discretion.

Defendant testified that after he was arrested and placed into a jail cell, he was summoned into a small room with Sergeant Hallenback and Lieutenant Willis, where Hallenback told him, "Me and [Lieutenant Willis] work for the feds now, and we've got you on a large crack cocaine

sale. You're facing life in prison. So that's why I'm here to help you, Jimmy." (J.A. at 69.) She also stated, "You're facing life in prison with your past record, and the Jackson Narcotics cannot help you. You're in the federal system. This is my world. I decide what happens here." (J.A. at 70.) According to Defendant, she requested his cooperation. Defendant requested an attorney, and she replied, "A lawyer cannot help you. You're in my world. You're in federal court. I will decide what goes and what doesn't." (*Id.*) He explained that he signed the waiver form because Hallenback told him the government "would prosecute me to the fullest unless I signed everything that everything [sic] she said . . . ." (*Id.*) Defendant also told her he just had a baby, and she replied. "Well, it's too bad about your child. Life in the federal system means you die there." (J.A. at 71.) Defendant testified that he became ill and that Lieutenant Willis escorted him to the bathroom several times. On cross examination Defendant denied having been read his rights; he only recalled hearing that he was facing life imprisonment and would never see his child again, and "everything went blank" after that. Defendant acknowledged that the statement of confession was his and that the signature and initials on the pages were written by him.

At the close of the hearing the district court denied Defendant's motion. In doing so, the court credited Hallenback's testimony that she did not threaten life imprisonment, over Defendant's testimony that she did. The court further pointed out that Defendant signed the waiver form clearly stating his rights to silence and an attorney, and that it did not believe Defendant, an "astute" individual, failed to read the form or understand what he was signing. The court concluded, "It appears what happened was that Mr. Cruse was concerned about the predicament he was in, and at the time it seemed like a good idea to cooperate. He has since discovered that he wished he hadn't done that, but that doesn't mean that the cooperation was coerced or it was extorted or it was a result of any undue influence." (J.A. at 81–82.)

### Defendant's Trial

At trial, Blakemore testified for the government about the controlled drug buys, as did several police officers who listened in on the telephone calls and personally monitored the transactions. The audiotapes and videotapes relating to the drug buys were also played for the jury.

Sergeant Hallenback also testified for the government about her role in the controlled drug buys. During cross examination the following exchange occurred:

Q: Before you started [your interrogation of Defendant], you and Lieutenant Willie were in there; correct?

A: Yes.

Q: And you told [Defendant] or Lieutenant Willie told him, I believe, that he was going to end up dead or with life in prison if he didn't cooperate.

A: No, we did not tell him that. We sat down to the interview, and he started talking, and he was talking about he just got picked up on that other charge.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to any of that.

THE COURT: Yes, sir. Any other charges aren't related to this. Ladies and gentlemen, you'll disregard any reference to any other charges. We've got a charge here that you're trying, and that's the only one that matters in this case.

(J.A. at 262–63.)

After defense counsel's cross examination concluded, the government rested its

case. When asked about possible defense witnesses, defense counsel advised the court that he had issued a subpoena to a person named Cecily Odom but that she was ill in the hospital. He then stated his intent not to present any evidence. While the court was asking Defendant questions to insure that he was fully informed about his right to testify, Defendant stated his wish that Odom testify, saying that she would be available the following week. The court asked defense counsel for a proffer of the anticipated testimony. Counsel informed the court that Odom told him she had seen Blakemore on various occasions begging Defendant for drugs, trying to give Defendant cocaine powder, and smoking marijuana with Defendant. However, Odom later stated that she did not want to testify. The court asked defense counsel about the proffered testimony's relevance, to which counsel stated it was "remotely relevant" in that it provided some impeachment evidence of a government witness' character. Defense counsel added, "Now, as far as being a defense, a legal defense to the case here, I really don't see that it is. I don't know that I'd be allowed to introduce the majority of it even if we had her here, so I don't know." (J.A. at 272.) The court concluded that the evidence was not relevant and refused to grant Defendant leave to produce Odom. Defendant did not testify, and the defense did not introduce any evidence or present any witnesses. The jury convicted Defendant on all charges.

### The Sentencing Hearing

Subsequently a presentence investigation report (PSI) was prepared. The PSI noted that Defendant was twenty-seven years old at the time, he had two years of college education, and he reported no mental or emotional illnesses. Based on the drug weight and a criminal history category of III, the PSI calculated a guideline range of 132 to 168 months imprisonment.

At the sentencing hearing, the district court asked Defendant if he had read the PSI. Defendant said that he had, but that he did not understand much of it. The court replied, "Okay. Well, there's a lot of it that a lot of people don't understand, but you've had an opportunity to look at it and talk to Mr. Mayo." The Defendant replied, "No, sir." (J.A. at 278.) The court said, "You've not talked to Mr. Mayo about it." Defendant again replied, "No, sir." The district court then mentioned a *pro se* motion of dismissal Defendant recently had filed, remarking, "I sense that you're becoming somewhat of a jailhouse lawyer," and informing Defendant that it would not rule on Defendant's "homemade motions that aren't appropriate." (J.A. at 279.) Defendant replied that he understood but was only trying to obtain evidence from his attorney.

Defense counsel then told the court that he was not hiding anything from Defendant and that Defendant had become increasingly difficult, as he only wanted to discuss issues of guilt, not sentencing. Defendant again explained that he had been trying to obtain some evidence from his attorney and to get him to subpoena various police officers for the sentencing hearing. Defense counsel insisted that he did not have the information Defendant requested and that he "ha[d] never had as much difficulty trying to speak with a defendant or a client as [he] had with [Defendant] after this trial." (J.A. at 282–83.)

Apparently aggravated with Defendant's behavior, the court decided to proceed with sentencing Defendant. No further discussions occurred to ascertain that Defendant and his counsel had discussed the PSI. The court sentenced him to 144 months imprisonment, followed by five

years of supervised release. Defendant filed a timely notice of appeal.

## II. DISCUSSION

### 1. Defendant's Statements During Police Interrogation

"We review the district court's factual findings with respect to a motion to suppress for clear error and its conclusions of law de novo." *United States v. Denton*, 246 F.3d 784, 787 (6th Cir.2001) (citing *United States v. Roark*, 36 F.3d 14, 16 (6th Cir.1994)). In other words, we accept the district court's factual findings unless we have a " 'definite and firm conviction that a mistake has been committed.' " *United States v. Rodriguez*, 301 F.3d 666, 668 (6th Cir.2002) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Moreover, because the district court is best positioned to determine credibility, we do not disturb its credibility findings. *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir.1999).

Defendant argues that his written statement to the police should have been suppressed because the statement was made involuntarily. Specifically, he contends that Sergeant Hallenback's statements that she had a case on him, that he was facing a life imprisonment sentence, and that a § 5K1.1 motion meant that cooperation could help him amounted to a combination of pressure and false promises that frightened him into signing the waiver form and confession statement.

The Fifth Amendment of the Constitution deems inadmissible confessions obtained through coercive means. *See United States v. Murphy*, 763 F.2d 202, 205 (6th Cir.1985), *cert denied*, 474 U.S. 1063, 106 S.Ct. 812, 88 L.Ed.2d 786 (1986). When a defendant asserts that a confession was coerced, the government bears the burden to prove, by a preponderance of the evidence, that the defendant's confession was voluntary. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). A determination regarding voluntariness must consider the totality of the circumstances and takes into account the following factors:

> the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given.

*United States v. Wrice*, 954 F.2d 406, 411 (6th Cir.1992) (citing *Murphy*, 763 F.2d at 205). Other relevant elements include "the length of the interrogation, its location, [and] its continuity." *Withrow v. Williams*, 507 U.S. 680, 693, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (citations omitted).

█ In this case, Defendant's testimony that he was not read his *Miranda* rights, that he was denied access to an attorney upon request, and that Sergeant Hallenback told him that he was facing life imprisonment, conflicted with that of Sergeant Hallenback, which the district court expressly credited over that of Defendant. While Defendant claims that he neither read nor understood the waiver form before signing it, the district court chose not to believe this testimony, deeming him an "astute" person who knew his rights and would not sign a statement without having first read it and understood it. This finding was not clearly erroneous, given Defendant's college background and his prior involvements with the criminal justice system (as reflected in the PSI's assignment to him of a Criminal History Category III).

Therefore, the only undisputed evidence of alleged coercion consists of Sergeant Hallenback's statements that Defendant would be brought into federal court and that the 5K1.1 motion was a possibility upon his cooperation with the government. Although "a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced," *Clanton v. Cooper,* 129 F.3d 1147, 1159 (10th Cir.1997) (citing *Arizona v. Fulminante,* 499 U.S. 279, 286–87, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). a statement about possible leniency upon cooperation is not generally impermissible.[1] *See Williams v. Withrow,* 944 F.2d 284, 289 (6th Cir.1991) (acknowledging that some degree of "carrot-and-stick approach to eliciting information from an uncooperative suspect" is acceptable), *rev'd on other grounds,* 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993).

Sergeant Hallenback's statements do not amount to coercion as a matter of law. Defendant does not allege that he was threatened in any physical manner or that the agents physically mistreated him. Indeed, he acknowledged in his testimony that he was permitted to use the bathroom upon request. Moreover, Defendant's age, level of education and intelligence, and emotional state do not suggest coercion. Defendant was twenty-seven years old at the time, he had two years of college education, and he had no mental or emotional illnesses. Therefore, we find that the record does not support a finding that Sergeant Hallenback's interrogation was coercive.

## 2. Statement at Trial About Another Charge

■ Defendant argues that Sergeant Hallenback's statement during her testimony that Defendant had "just got picked up on that other charge" unfairly prejudiced his right to a fair trial. In this case, however, defense counsel immediately objected, and the court sustained the objection, instructing the jury to disregard the statement. Defendant did not request a mistrial, but he implicitly argues on appeal that the statement was so prejudicial the district court should have declared a mistrial *sua sponte.* We will reverse a district court's decision not to declare a mistrial based on improper testimony only if it abused its discretion. *See United States v. Yang,* 281 F.3d 534, 549 (6th Cir.2002).

"[W]here deliberately injected testimony concerning unrelated offenses prejudices the defendant, we will not hesitate to reverse verdicts that may have been reached because of the potential influence of such statements." *United States v. Forrest,* 17 F.3d 916, 921 (6th Cir.1994). However, we have held that where a trial judge strikes the statement from the record and provides a curative instruction, and ample evidence of the defendant's guilt exists, the statement is not unfairly prejudicial. *See id.* (holding that despite intentionally "blurted" statement, mistrial was not required because of "clear admonition by the judge" and "ample other evidence of guilt").

It appears likely that Sergeant Hallenback intentionally blurted the information about the "other charge" pending against Defendant. Defense counsel asked Sergeant Hallenback a narrow question about

---

**1.** Although Defendant argues on appeal that he was promised leniency, the district court specifically credited Sergeant Hallenback's testimony that she made no promises of leniency, and such a credibility determination should not be disturbed now. Moreover, Defendant's testimony does not support his contention; it alleged only that Sergeant Hallenback implied that the government could reward his full cooperation.

whether she and the other interrogating officer told Defendant he would end up dead or a with a life sentence if he did not cooperate. Hallenback denied making that statement, then proceeded to supply the unnecessary sentence about "that other charge." (J.A. at 262.) Sergeant Hallenback, a thirteen-year veteran of the Jackson Police Department, knew better. *See United States v. Ortiz*, 507 F.2d 1224, 1226 (6th Cir.1974) (finding a similar "blurted" statement of an FBI agent to have been deliberately made, based on his "training and experience that records of arrests not resulting in conviction are not generally admissible in evidence and that reference to such on the witness stand usually would be prejudicial and reversible error"), *quoted with approval in United States v. Andrea*, 538 F.2d 1255, 1256 (6th Cir.1976).

Nevertheless, the error was harmless. Sergeant Hallenback's statement was immediately objected to and sustained with a curative instruction. Moreover, ample evidence existed supporting Defendant's guilt, not the least of which included his written confession, the testimony of informant Blakemore and several law enforcement officers, taped conversations between Blakemore and Defendant regarding the drug buys, and the audio and videotapes of the two drug transactions. In light of the weighty evidence supporting guilt, Defendant did not suffer unfair prejudice regarding Sergeant Hallenback's statement, and we will not reverse his conviction on this ground.

### 3. District Court's Exclusion of a Defense Witness at Trial

Defendant argues that the district court's decision not to permit testimony from his proposed witness, Cecily Odom, violated his constitutional rights pursuant to the Compulsory Process Clause of the Sixth Amendment, which required the district court to permit Odom's testimony. The government argues that the district court ruled correctly because the proffered testimony was not properly admissible under Federal Rule of Evidence 608(b).

We review a district court's evidentiary determinations for abuse of discretion. *United States v. Hawkins*, 969 F.2d 169, 174 (6th Cir.1992). However, when the evidentiary ruling involves an alleged violation of Sixth Amendment rights, the constitutional issue is reviewed *de novo*. *United States v. Hamilton*, 128 F.3d 996, 999 (6th Cir.1997) (citing *United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir.1993)).

The Sixth Amendment's Compulsory Process Clause provides to a defendant "the right to call witnesses that are 'material and favorable to his defense.'" *Wong v. Money*, 142 F.3d 313, 325 (6th Cir.1998) (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)). However, "[this right] is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Generally, "[f]or denial of a defendant's proffered testimony to constitute reversible error, the testimony must establish a reasonable doubt about guilt in light of the record in the case." *United States v. Reifsteck*, 841 F.2d 701, 705 (6th Cir.1988).

Moreover, the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The Supreme Court has held that "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at

308 (quoting *Rock v. Arkansas,* 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

█ In this case, the proffered testimony was not admissible. At trial, defense counsel stated that it hoped to impeach government witness Blakemore through specific instances of conduct. Such impeachment evidence must comply with Rule 608(b), which provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed.R.Evid. 608(b).

The Rule 608(b) prohibition applies squarely to the present case, where Defendant sought to introduce Odom's testimony for the purpose of attacking a witness' credibility. Because such rule is "not 'arbitrary' or 'disproportionate to the purposes they are designed to serve,'"

*Scheffer,* 523 U.S. at 308, exclusion of the testimony did not offend the Compulsory Process Clause. Moreover, admission of the testimony would have done little to "establish a reasonable doubt about guilt," *Reifsteck,* 841 F.2d at 705, given the surveillance evidence of Defendant's distribution of cocaine base to Blakemore.[2]

### 4. Adherence to Federal Rule of Criminal Procedure 32(e)(3)(A) at the Sentencing Hearing.

Defendant contends that during the sentencing hearing, the district court failed to determine adequately whether he and defense counsel had read and discussed the PSI pursuant to Federal Rule of Criminal Procedure 32(c)(3)(A), and thus resentencing is required. We agree.

"Before imposing sentence, the [district court] must: (A) verify that the defendant and defendant's counsel have read and discussed the presentence report made available under subdivision (b)(6)(A)." Fed. R.Crim.P. 32(c)(3)(A).[3] Although the district court need not explicitly ask a defendant whether he and his attorney have read and discussed the report, the court must *"somehow* determine that defendant and counsel have had an opportunity to read and discuss" it. *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir.1988) (emphasis in original). Furthermore, "the fact that a defendant and his counsel may have discussed issues contained in the re-

---

**2.** Defendant argues for the first time on appeal that the district court misunderstood the reason he wanted to present Odom's testimony, and that the actual purpose was to mount a possible entrapment defense. A review of the record, however, reflects that the district court specifically inquired about the relevancy of the proffered testimony, and that defense counsel replied that it was "remotely relevant" to Blakemore's "bad character." (J.A. at 272.) Not only did defense counsel not even intimate that it wished to mount an entrapment defense, he expressly added that he did

not believe the evidence would provide any sort of legal defense. We do not believe that the district court misunderstood Defendant's intentions as to Odom's testimony, and will not entertain an entrapment theory now.

**3.** We note that, pursuant to an amendment effective December 1, 2002, this requirement is now found at Federal Rule of Criminal Procedure 32(i)(1)(A). However, because Defendant was sentenced prior to this effective date, we will refer to Rule 32(c)(3)(A) here.

port is insufficient—there must be evidence on the record that the defendant and his counsel have read and discussed the report." *United States v. Osborne*, 291 F.3d 908, 910 (6th Cir.2002). Failure to comply with Rule 32(c)(3)(A) requires a remand for resentencing. *See, e.g., United States v. Mitchell*, 243 F.3d 953, 955 (6th Cir.2001).

█ In this case, the district court asked Defendant if he and his attorney had discussed the PSI, and Defendant said no. Defense counsel provided no assurance that discussions had taken place, but instead stated that Defendant had become difficult. After Defendant repeatedly referred to trial issues, the district court decided to proceed with the sentencing. The district court apparently grew frustrated with Defendant's attempts to act as a "jailhouse lawyer" and to file "homemade motions that [were not] appropriate." (J.A. at 279.) Nevertheless, frustration with a less-than-cooperative defendant does not justify proceeding with sentencing in violation of Rule 32(e)(3)(A)'s requirements. Therefore, we vacate Defendant's sentence and remand the case for a new sentencing hearing.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction, **VACATE** his sentence, and **REMAND** the case to the district court for a new sentencing hearing.