**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1232n.06

**No. 11-5910**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 28, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| JAMES WALKER, | ) | |
| Defendant-Appellant. | ) | |

Before: SUTTON, GRIFFIN, and WHITE, Circuit Judges.

**HELENE N. WHITE**, Circuit Judge. Defendant James "Bud" or "Bug" Walker was convicted of being a felon in possession of ammunition in or affecting interstate or foreign commerce, in violation of 18 U.S.C. § 922(g). In this direct appeal, Walker challenges the district court's denial of a mistrial and asserts his mandatory 180-month sentence is unconstitutional under the Eighth Amendment. We AFFIRM.

**I.**

In July 2007, undercover officers from the Memphis Police Department purchased crack cocaine from Walker on multiple occasions. On August 1, 2007, after receiving numerous complaints regarding drug sales, officers conducted a knock-and-talk at The Lucy, a rooming house where Walker regularly resided. Walker answered the door and provided oral and written consent

1

for officers to conduct a search of his room, which yielded 0.3 grams of crack cocaine and thirteen 9mm rounds of ammunition.

Walker was arrested for possession of crack cocaine. Based on information from Walker, officers wrote in the Rights Waiver Form that Walker had previously been convicted of a felony and that he had recovered the ammunition three or four weeks earlier from a house that he managed. Walker reviewed and signed the Rights Waiver Form. An examination of the ammunition revealed it was not manufactured in Tennessee, and thus had traveled in interstate or foreign commerce.

The drug charge proceeded in state court and the instant ammunitions charge in federal court. Before trial, Walker filed a motion in limine to exclude physical or testimonial evidence of prior drug sales. The district court granted Walker's motion, stating:

> [The government] can establish why [the police] went to the location without saying they were going on drug sales. You can say they had a warrant or they had a tip or something without getting into the details of it. In other words, part of the reason just as you ask: Why did the police go there? The jury likes a narrative. The narrative helps the jury to understand the context. I agree with that but you don't need to point out – for example, suppose the defendant had been convicted of some prior crime, they had a warrant for his arrest. You don't go in with anything that says, "We had a warrant to go to the scene – to the house and that's why we went there."

The court further noted that "proof of drug sales is like the elephant in the room. Once you put that proof in, nobody sees or hears anything else." Walker stipulated to the interstate nexus and the fact that he had a prior felony conviction, pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997).

At trial, the government called five witnesses. Memphis Police Officer Louis Brownlee testified first. On direct examination, the government asked Officer Brownlee what he did after gathering information relevant to the investigation.

2

> Q.  Just tell us what you did with the information [from your investigation].
> A.  The information that I gathered, you know, I went back to the undercover location and gave it to the gentleman that was on the enforcement side.
> Q.  Okay.  Now, why did you do that?  Why didn't you proceed with the information you were given, you had gathered?
> A.  You know, *when you're out dealing*, you know, no one comes up and says, "Hi, I'm Louis Brownlee.  This is my social and date of birth."  You know, they give nicknames, street names, whatnot . . . .
> . . .
> Q.  Okay.  Now, specifically with your contact with "Bud," how long did that investigation last?  How much contact did you have with the individual who you knew as "Bud" or "Bug"?
> A.  I personally made -- *I made three buys --*

(emphasis added).  Defense counsel objected and the government agreed to strike the testimony.  The court issued a curative instruction reminding the jury to focus only on the elements of the offense.

The government next called Memphis Police Officer Jeff Dennison, who had participated in Walker's arrest.  The government asked Officer Dennison about the investigation at the Lucy.

> Q.  And what happened when you arrived at [the] Lucy?
> A.  We pulled up on the scene at [the] Lucy.  I mean, *it stemmed from a drug complaint* from an undercover officer.  We went to that location; and as we pulled up, there was a female coming out of [the] Lucy from the front door.   Through our investigation, [the] Lucy was a rooming house; and that was the intel that was provided to us from the undercover officer.
> Q.  Okay.  Now, without going into details of the undercover officer, why he was there or anything like that, what did you do once you came to the location at [the] Lucy?
> A.  We asked -- we inquired about a male by the name of "Bud" or nicknamed "Bud."  We were wanting to identify "Bud" because *we were making undercover buys from him*.

(emphasis added).  Defense counsel again objected.  When asked by the district court whether the officers were aware of the motion in limine, the government responded, "These officers have not

been made aware of your Honor's previous ruling. I haven't spoken with them. I tried to stop him

before he says [sic] anything."

Defense counsel moved for mistrial.[1] The district court denied the motion but instructed the

government to tell the officers "not to discuss drugs or buys or the investigation beyond the fact that

it occurred." Following a sidebar, the court issued a second curative jury instruction.

Next, the government called Memphis Police Officer Paul Sherman, who had also

participated in Walker's arrest. During direct examination, the government offered Walker's Rights

Waiver Form as an exhibit and had Officer Sherman read portions to the jury. The Rights Waiver

Form provided information about Walker's prior convictions, including his prior felony convictions

for robbery and burglary. Defense counsel did not object.

On cross-examination, defense counsel asked Officer Sherman about a woman called

"Fabulous" who was investigated with Walker for dealing drugs.

> Q. And Officer Brownlee gave you information about a "Fabulous," right?
> A. About what?
> Q. About a woman named "Fabulous."
> A. In regards to this complaint?
> Q. In regards to this information.
> A. No, he didn't give me -- this was in regards to an individual by the name of "Bud."
> Q. And that's all he said? It was just about "Bud"?
> A. No, there was some *other drug buys made* but at this --

(emphasis added). Defense counsel objected and renewed his motion for mistrial. The court denied

the motion and ordered Officer Sherman to avoid any mention of drugs or drug buys. The court did

---

[1]Defense counsel stated that he "renew[s] his motion for a mistrial." PID 238. However, the initial request for a mistrial is not reflected in the transcript.

not deliver a curative instruction to the jury. On redirect and re-cross, Officer Sherman again read portions of the Rights Waiver Form that included information about Walker's prior convictions, without objection by defense counsel.

In closing argument, the government reminded the jury that Walker "had been convicted of robbery and burglary." Defense counsel did not object to this statement. At the close of trial, the district court instructed the jury to consider the stipulated felony only "for the fact that it exists and for nothing else."

The jury found Walker guilty of being a felon in possession of ammunition. Based on his prior felony convictions, Walker falls within the definition of an "armed career criminal" under 18 U.S.C. § 924(e). This classification gave Walker an advisory guideline range of 262 to 327 months, with a statutory mandatory minimum sentence of 180 months.

Prior to sentencing, Walker filed a position paper with the court arguing that a 180-month sentence would violate the Eighth Amendment. Walker argued several factors collectively created a categorical Eighth Amendment violation under *Graham v. Florida*, 130 S. Ct. 2011 (2010): the fact that his then-current age of 57 and the federal penal system's lack of parole created an effective life sentence; the fact that his last crime of violence was committed more than 10 years before; and the fact that he possessed thirteen bullets. In addition, Walker argued that the minimum 180-month sentence was grossly disproportionate to his crime.

The district court rejected Walker's Eighth Amendment challenge and imposed the mandatory minimum sentence of 180 months. This appeal ensued.

**II.**

Walker asserts that the district court should have granted a mistrial on three grounds: (1) the introduction of improper statements regarding drugs, drug dealing and drug buys that should have been excluded based on Walker's motion in limine; (2) prosecutorial misconduct based on the introduction of evidence regarding Walker's prior felony convictions despite his *Old Chief* stipulation; and (3) a violation of due process based on cumulative error.

**A.**

This court reviews the denial of a motion for a mistrial for abuse of discretion. *United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006) (citing *United States v. Martinez*, 430 F.3d 317, 336 (6th Cir. 2005). In order to find the district court abused its discretion, we must have "a definite and firm conviction that the trial court committed a clear error of judgment." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009) (quoting *Berger v. City of Mayfield Heights*, 265 F.3d 399, 402 (6th Cir. 2001)).

We will assume arguendo that all the contested statements were improper. We conclude, nevertheless, that the district court did not abuse its discretion in denying Walker's motion for a mistrial. This court has listed five factors to consider in determining whether a mistrial is warranted based on an improper statement: "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." *Zuern v. Tate,* 336 F.3d 478, 485 (6th Cir. 2003) (citing *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994)).

In this case, Walker asserts that the government witnesses, not the government itself, deliberately injected the improper testimony. Although this court has considered arguments brought under this theory, *see e.g., Forrest,* 17 F.3d at 921; *United States v. Cruse*, 59 F. App'x 72, 79 (6th Cir. 2003) (unpublished), the practical implication of this argument is that Walker is limited to the final three factors of the test, *see Forrest*, 17 F.3d at 921, effectively conceding that the first two factors–whether the improper remarks were unsolicited and whether the prosecutor's line of questioning was reasonable–weigh in favor of the government.

The record is mixed in support of Walker on the third factor, whether a limiting instruction was immediate, clear and forceful. Although some statements were followed by an appropriate curative instruction, one reference to "drug buys" was not.

Under the fourth factor, this court considers whether a government witness's interjection of improper testimony was intentional under the "bad faith" prong of this analysis. *See Forrest*, 17 F.3d at 921; *Cruse*, 59 F. App'x at 79. Courts sometimes infer intent when a witness, as an experienced law enforcement agent, was or should have been aware of the impropriety of testifying about unrelated charges.[2] *See Cruse*, 59 F. App'x at 78–79 ("It appears likely that Sergeant Hallenback intentionally blurted the information about the 'other charge' pending against Defendant. Sergeant Hallenback, a thirteen-year veteran of the Jackson Police Department, knew better."); *see also United States v. Ortiz*, 507 F.2d 1224, 1226 (6th Cir. 1974) (finding a statement of an FBI agent to have been deliberately made, based on his "training and experience that records of arrests not

---

[2]We disagree with Walker's contention that *United States v. Murray*, 784 F.2d 188 (6th Cir. 1986), creates a test regarding the "deliberateness" of government witnesses who are in law enforcement.

resulting in conviction are not generally admissible in evidence and that reference to such on the witness stand usually would be prejudicial and reversible error"), *quoted with approval in United States v. Andrea*, 538 F.2d 1255, 1256 (6th Cir. 1976).

In this case, however, it does not appear that the statements were made in bad faith. The government had not informed the first two witnesses about the limitations on their testimony and no witness repeated his mistake after being admonished. *See United States v. Caldwell*, 518 F. 3d 426, 432 (6th Cir. 2008). Additionally, the district court noted that it believed the improper comments were unintentional. Further, even if the insertion of improper evidence was intentional, it is not sufficient to warrant a mistrial when other factors weigh against the defendant. *See Forrest*, 17 F.3d at 921; *Cruse*, 59 F. App'x. at 78.

The fifth and final factor, whether the remarks were only a small part of the evidence against Walker, clearly weighs in favor of the government. To prove a violation of 18 U.S.C. § 922(g), the government had to establish that: (1) Walker was a convicted felon, (2) Walker knowingly possessed ammunition, and (3) the ammunition had traveled in or affected interstate commerce. *United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (citation omitted). Because Walker stipulated that he was a convicted felon and that there was an interstate nexus, two of the three elements are satisfied.

Overwhelming evidence shows that Walker knowingly possessed the ammunition. Walker was present in the room where ammunition was found in plain view. Walker admitted orally and in writing that he had recovered the ammunition from a house that he managed and that he had possessed it for three or four weeks. In light of the overwhelming evidence that Walker did in fact

8

possess ammunition in violation of § 922(g), it seems unlikely that the outcome of the trial would have been any different had the improper statements not been uttered.

Only when the evidence was so prejudicial that the jury could not be trusted to disregard it, should a new trial be granted. *United States v. Ursery*, 109 F.3d 1129, 1133–34 (6th Cir. 1997) (citing *United States v. Wells*, 431 F.2d 432, 433 (6th Cir. 1970)). Here, although the testimony regarding drugs and drug dealing was improper, we are satisfied that Walker was not deprived a fair trial.

**B.**

Next, Walker argues that references to his prior felonies by the government constitute prosecutorial misconduct and warrant a mistrial. Under *Old Chief*, where a defendant stipulates to his status as a felon for purposes of § 922(g)(1), the government may not refer to the specific name or nature of the defendant's prior convictions in its case-in-chief. *Old Chief*, 519 U.S. at 186. In this case, the Rights Waiver Form introduced by the government and read to the jury included the information regarding Walker's prior felonies.

"Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law and fact, which we review *de novo*." *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009) (citations omitted). "In order to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). To determine flagrancy, the court considers: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the

statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *United States v. Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004) (citations omitted). "In the evaluation of a claim for prosecutorial misconduct, it is not enough that the prosecutor's comments were improper, but the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009) (citations, internal quotation marks and brackets omitted).

Because Walker failed to object below, we review for plain error. *United States v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011) (citing *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008)). "To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006).

Walker was not deprived of his substantial rights. The district court specifically instructed the jury to consider Walker's previous felony conviction only for the fact that the conviction existed. This court has held that a similar jury instruction is presumed to be followed by the jury, and thus removes prejudice when evidence is admitted contrary to *Old Chief*. *See United States v. Jackson*, 454 F. App'x. 435, 442 (6th Cir. 2011) (unpublished); *see also Carson*, 560 F.3d at 576. The remarks regarding Walker's prior felonies were isolated and limited to the point that Walker must

have supplied the information recorded in the form.[3]  Finally, as discussed above, the evidence against Walker is overwhelming.

In sum, although evidence of Walker's prior convictions was improper, the prosecutor did not deprive Walker of his substantial rights.  The circumstances do not warrant reversal on the basis of prosecutorial misconduct.

## C.

Finally, Walker argues that even if no single assignment of error is sufficient to warrant a new trial, the totality of errors deprived him of his constitutional right to a fair trial.  "In order to obtain a new trial based upon cumulative error," Walker "must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *Trujillo*, 376 F.3d at 614 (citing *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993)).  Errors that might not be prejudicial on their own amount to a deprivation of due process when they "cumulatively produce a trial setting that is fundamentally unfair." *Id.* (citations omitted).

Here, there was unpreserved error in admitting evidence of Walker's prior convictions and harmless error in the witnesses's statements regarding drugs and drug deals.[4]  A trial need not be

---

[3]Because Walker did not deny making the statements, the fact that he provided the information regarding his prior offenses is not relevant.  That said, the argument was not particularly prejudicial either.

[4]As the court noted in *United States v. Warman*:

This Court has not directly addressed the issue of how (if at all) to incorporate into a cumulative-error analysis, plain errors that do not, standing alone, necessitate reversal.  Some circuits combine all nonreversible errors (*i.e.*, harmless errors and plain errors failing to necessitate reversal) into a cumulative-error analysis.  In contrast, other circuits appear to review separately any cumulative plain errors.

"perfect" to withstand a due process challenge. *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). In this case, the trial was not "inflamed by marginally relevant and irrelevant evidence that was highly prejudicial." *Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). Rather, the relevant evidence was overwhelming and the improper evidence and comments likely had no effect on the verdict. Accordingly, Walker is not entitled to a new trial based on cumulative error.

## III.

Walker also challenges the proportionality of his 180-month sentence under the Eighth Amendment. Constitutional challenges to a sentence present questions of law that are reviewed de novo. *See United States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009). Eighth Amendment cases addressing the proportionality of sentences fall within two general classifications. The first (as-applied) classification "involves challenges to the length of term-of-years sentences given all the circumstances in a particular case." *Graham*, 130 S. Ct. at 2021. The second (categorical) classification traditionally "comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty," but was recently expanded by the Supreme Court to include term-of-years sentences in narrow instances. *See id.* Walker asserts that his sentence violates the Eighth Amendment both categorically and as-applied.

---

578 F.3d 320, 349 n.4 (6th Cir. 2009) (citations omitted); *see also United States v. Dickens*, 438 F. App'x 364, 375 n.7 (6th Cir. 2011). As in *Warman*, we need not reach a determination on this issue as Walker's cumulative-error claim fails regardless. *Warman*, 578 F.3d at 349 n.4 ("Here, we need not decide whether to consider harmless and plain errors together or separately because Warman's cumulative-error claim fails regardless.").

**A.**

Walker argues that his 180-month sentence categorically violates the Eighth Amendment under *Graham*. However, this court has concluded that *Graham* does not apply in cases where the defendant receives a sentence that is "less severe" than a life sentence. *See United States v. Jones*, 476 F. App'x 651, 652 (6th Cir. 2012) (unpublished); *United States v. Moore*, 643 F.3d 451, 457 (6th Cir. 2011) (holding sentences of life without parole "unique in their severity"). Further, this circuit's holdings emphasize that *Graham* is limited to juveniles. *See United States v. Banks*, 679 F.3d 505, 507 (6th Cir. 2012); *Jones*, 476 F. App'x at 652; *Moore*, 643 F.3d at 457.

Walker's attempts to differentiate his case are unpersuasive. That Walker's sentence may prove to be an "effective[] life sentence" does not create an Eighth Amendment violation. "[T]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004); *see also Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012) (holding that consecutive, fixed-term sentences for juveniles who committed multiple non-homicide offenses are not clearly unconstitutional under *Graham*, even when they amount to the practical equivalent of life without parole). Accordingly, Walker's categorical challenge to his sentence fails.

**B.**

Walker also challenges the proportionality of his sentence. When considering an Eighth Amendment challenge based on the facts and circumstances of a particular case, the Supreme Court has instructed the courts to utilize the "narrow proportionality principle." *Harmelin v. Michigan*,

501 U.S. 957, 997 (1991) (Kennedy, J., concurring); *Moore*, 643 F.3d at 454; *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003). This principle "does not require strict proportionality between crime and sentence." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring) (citing *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "Rather, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Moore*, 643 F.3d at 454 (citations and quotation marks omitted).

Here, Walker has failed to demonstrate that his 180-month statutory minimum sentence for possessing ammunition is grossly disproportionate to the gravity of his crime. "Eighth Amendment jurisprudence grants 'substantial deference' to the legislatures who determine the types and limits of punishments." *Id.* at 456 (quoting *Harmelin*, 501 U.S. at 999) (Kennedy, J., concurring). Here, Walker received the minimum sentence permitted under the law, and "[a] sentence within the statutory maximum set by statute generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)); *Layne*, 324 F.3d at 474. Further, we have held that sentences under the Armed Career Criminal Act are not cruel and unusual. *See Moore*, 643 F.3d at 456; *United States v. Warren*, 973 F.2d 1304, 1311 (6th Cir. 1992); *United States v. Pedigo*, 879 F.2d 1315, 1320 (6th Cir. 1989). Other courts of appeals have reached the same conclusion. *See Moore*, 643 F.3d at 456 (collecting cases).

Although some of Walker's mitigating factors are strong, the Eighth Amendment does not require a consideration of a defendant's mitigating factors in a non-capital case. *See Harmelin*, 501 U.S. at 995; *Moore*, 643 F.3d at 455. Like the district court, we cannot say that we would have imposed a mandatory 180-month sentence if left to our own devices; however, we cannot find that

Walker's sentence raises an inference of gross disproportionality. Thus, we need not engage in a proportionality analysis by comparing his sentence with those of offenders in this and other jurisdictions. *Moore*, 643 F.3d at 456 (citation omitted).

## IV.

For the reasons stated, we AFFIRM the judgment of the district court in all respects.