RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

      *v.*

RUSSELL WIMBLEY,

                *Defendant-Appellant.*

No. 07-6361

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 06-00157-001—Thomas A. Varlan, District Judge.

Submitted: December 10, 2008

Decided and Filed: January 28, 2009

Before: BATCHELDER, GILMAN, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Guy W. Blackwell, LAW OFFICE OF GUY W. BLACKWELL, P.C., Gray, Tennessee, for Appellant. Debra A. Breneman, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Russell Wimbley was charged with three counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a), after allegedly selling varying quantities of the drug to a police informant on three separate occasions. He was convicted by a jury on all three counts and was sentenced by the district court to a mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A) as a result of both his current and prior drug convictions. In this timely appeal, Wimbley contends that the district court erred by twice denying his motions for a mistrial after (a) a drug task-force officer

1

testified that Wimbley had made "numerous" and "so many" sales to the informant, and (b) the prosecutor commented that Wimbley could have introduced fingerprint or DNA evidence if he had so chosen, but did not. Wimbley also argues that 21 U.S.C. § 841(b)(1)(A)'s mandatory life sentence requirement is unconstitutional. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.      Factual background

In July 2006, officers from the Blount County Sheriff's Department executed a search warrant at the home of William Jones, looking for drugs. The officers found a very small amount of crack cocaine in the house. Jones admitted that he had been selling crack and identified the sources of his supply. As a result, the officers opened a new investigation in which Jones would act as a government informant, purchasing illegal drugs from his suppliers under the close supervision and control of the officers.

Prior to each purchase, the officers followed an established procedure of carefully searching Jones and his vehicle to ensure that he did not possess any illegal narcotics. The same search was repeated after each drug purchase. Jones was also fitted with a covert recording/transmitting device and was given a cash incentive of $100 per purchase.

In August 2006, Jones placed a recorded call to Wimbley (the defendant) during which the officers recognized Wimbley's "distinctive voice." Jones agreed to meet Wimbley at the latter's house on Laurel Lane in Blount County. The two men met and went inside the house, where Wimbley sold Jones crack cocaine. During the transaction, Wimbley could be heard via Jones's transmitting device saying "you're killing me, I'm not making any money on this." After the purchase, Jones turned over 46.1 grams of crack cocaine to the officers.

The second controlled purchase occurred in September 2006. Jones, again acting under directions from the officers on the case, contacted Wimbley about buying more drugs. Wimbley told him to go to a house on Belfast Street in Maryville, Tennessee. After Wimbley didn't show up to meet him, Jones called back and they arranged an alternative meeting place at a house on Brown School Road in Blount County. Jones met Wimbley at the house and attempted to purchase $2,300 worth of crack. Wimbley did not have that

amount of crack ready for sale, but offered to make up the difference in powder cocaine. Per his instructions from the officers, Jones said that he was interested only in crack. Jones ultimately received 29.8 grams of crack in the purchase.

In November 2006, Jones made a third and final controlled purchase from Wimbley. He met Wimbley at a house on West Fulton Street in Alcoa, Tennesse and came away with 67.3 grams of crack cocaine.

A federal grand jury indicted Wimbley on November 7, 2006 on three counts of knowingly and intentionally distributing crack cocaine, in violation of 21 U.S.C. § 841(a). The officers instructed Jones to persuade Wimbley to meet with him one more time on the day following Wimbley's indictment. After numerous attempts, Jones got Wimbley to agree to meet him at a fast-food restaurant. When Wimbley arrived, local and federal law enforcement officers surrounded him and placed him under arrest. Wimbley broke free and fled, but was soon apprehended.

## B.     The trial

At Wimbley's trial, the parties stipulated that the substances at issue were crack cocaine, and also stipulated to the quantity of the substances as determined by laboratory testing. The government presented the testimony of three members of the drug task force that had arranged the controlled purchases, as well as the evidence custodian. Wimbley presented no witnesses or other evidence.

During the direct examination of Sergeant Shaffer, an officer with the drug task force, the prosecutor asked if the second controlled purchase took place at the same location as the first. Shaffer responded, "No sir. We had made *numerous buys* from [Wimbley] on different occasions and it was usually different locations. He would tell different places, and on this particular occurrence he said to come to a residence on Belfast Street." (Emphasis added.) Defense counsel did not raise a contemporaneous objection to Shaffer's response.

During Sergeant Shaffer's cross-examination, the following exchange occurred:

DEFENSE COUNSEL:     You have learned that [crack cocaine is] usually packaged in plastic baggies?

SGT. SHAFFER:     Commonly.

| | |
|---|---|
| DEFENSE COUNSEL: | And, in fact, in these cases, it's alleged that they were sold in plastic baggies? |
| SGT. SHAFFER: | I don't recall.  I think one of the occasions that we returned it was in a piece of—*we made so many buys off [Wimbley], it wasn't always in plastic*. |
| DEFENSE COUNSEL: | We're talking about three purchases. You have purchased—you're alleged to have purchased three bags of cocaine? |
| SGT. SHAFFER: | Yes, sir. |
| DEFENSE COUNSEL: | . . . And those three instances that we're here on today were in—the drug was alleged to have been contained in those plastic bags, is that fair? |
| SGT. SHAFFER: | I specifically recall—I can't testify to that, no, sir.  There were occasions that he came back, and it was in, specifically, in his hands, is what it was given to him from. |
| DEFENSE COUNSEL: | Nothing more than the cocaine, you say? |
| SGT. SHAFFER: | That's correct. |
| DEFENSE COUNSEL: | No bag? |
| SGT. SHAFFER: | That's correct. |
| DEFENSE COUNSEL: | Were there ever occasions where there was a bag? |
| SGT. SHAFFER: | Yes, sir. |

(Emphasis added.)  Defense counsel did not contemporaneously object to this testimony, either.

After returning from the mid-day recess, defense counsel moved for a mistrial, alleging that Sergeant Shaffer had testified to "numerous buys that took place in addition to the three" at issue.  The  district court held the motion for mistrial under advisement.  Later in the day, the court returned to the issue, stating in part:

> The Court, in considering this testimony, believes that at worst it is confusing and does not constitute grounds for a mistrial.  The language as to "numerous buys," if erroneously admitted, the Court would find was accidental and isolated.

> The Court believes, based on a review and consideration of relevant Sixth Circuit jurisprudence, that a curative instruction will alleviate any confusion the jury might be under; and, as a result, the statement, if otherwise erroneous, would not be overly prejudicial.

The district court informed the parties that it would tell the jurors upon their return that Wimbley was on trial solely for the particular crimes charged in the indictment and that they were to limit their consideration to those offenses. Defense counsel then asked the court to delay its curative instruction until the close of trial. After confirming with counsel that it had properly understood the request, the court agreed to give the instruction at the end of the trial.

Defense counsel stated in his closing argument that the police should have conducted DNA or fingerprint testing on the bags of crack cocaine purchased by Jones, and that their failure to do so was a fatal flaw in the government's proof. He went on to tell the jury that he was "offended that government officers would suggest that it's too expensive . . . or that it's not necessary" to perform such testing. In rebuttal, the prosecutor addressed defense counsel's assertion as follows:

> [T]o suggest that the Government didn't do enough to bring the proof to bear by virtue of not doing fingerprint analysis or DNA analysis, you heard the officers testify that it wouldn't have done any good.
>
> What you didn't hear is that the Defendant didn't try to do it or have it done. The Defendant has the ability to have these things tested, too, for fingerprints and DNA. If it was such a big deal to him, why didn't he have it tested, if he thought it would help him? But, no, he just wants to complain because we didn't go and do these things that we don't think are necessary to prove the guilt of Russell Wimbley.

Defense counsel did not object to the prosecutor's rebuttal argument.

The district court went on to charge the jury, cautioning repeatedly that the government had the sole burden of proof, that Wimbley was presumed innocent, that he was on trial only for the three crimes charged, and that Wimbley had an absolute right not to testify or present any evidence. Neither party objected to the charge as given. After the jury began deliberations, however, defense counsel moved for a mistrial on the grounds that the prosecutor, in his rebuttal, had "made specific reference to Mr. Wimbley's failure to testify." Defense counsel stated:

> [M]y objection would be on counsel's argument to the jury that we didn't provide any fingerprint analysis or DNA analyis.  The burden is on the Government, as the Court knows, and that was inappropriate . . . .  He suggests to this jury that we had some obligation to bring this in here if we wanted to question anything about this case . . . .

The court denied Wimbley's motion for a mistrial, noting that he had made no objection to the closing argument and that, even if an objection had been raised, it would have been meritless.

**C.      The sentencing**

The Presentence Report (PSR) informed the district court that Wimbley was responsible for 143.2 grams of crack cocaine, resulting in a base offense level of 32.  But because Wimbley had two prior felony drug convictions from 1974 and 2002, he was classified as a career offender under the Sentencing Guidelines, resulting in an offense level of 37.  Given the total offense level of 37 and a criminal history category of VI, the applicable Guidelines range was 360 months to life imprisonment.  Wimbley was also subject to a statutory mandatory minimum term of life imprisonment under 21 U.S.C. § 841(b)(1)(A) due to the amount of drugs involved and his two previous drug convictions.

The sentencing hearing took place in October 2007.  Defense counsel argued that the mandatory minimum sentence was "far too harsh" in light of Wimbley's history and circumstances, but conceded that the court had no authority to impose a lesser sentence.  The district court concluded that the PSR accurately calculated Wimbley's advisory Guidelines range and that the statutory mandatory minimum controlled.  After Wimbley admitted his prior convictions, the court imposed the mandatory minimum sentence of life imprisonment.

## II.  ANALYSIS

**A.      Standard of review**

Wimbley argues that the district court erred on two separate occasions by failing to grant a mistrial.  We review a district court's denial of a motion for mistrial under the abuse-of-discretion standard.  *United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008).  Wimbley also argues for the first time on appeal that 21 U.S.C. § 841(b)(1)(A) is unconstitutional.

This court does not ordinarily consider arguments not raised below, but this is a prudential rule, not a jurisdictional one. *United States v. Hayes*, 218 F.3d 615, 619 (6th Cir. 2000). Such arguments may be considered in order to address plain errors or defects affecting substantial rights, *id.* at 619-20; Fed. R. Crim. P. 52(b), especially where, as here, the argument has been fully briefed and involves a purely legal issue. *United States v. Ellison*, 462 F.3d 557, 560-61 (6th Cir. 2006).

**B.      Sergeant Shaffer's comments did not warrant a mistrial**

Wimbley contends that Sergeant Shaffer's testimony indicating that the drug task force had made "numerous" and "so many" controlled purchases from Wimbley constituted a deliberate, intentional attempt to compromise the integrity of the trial. Following defense counsel's objection, the district court reviewed the transcript and found that the statements were, at worst, confusing, and it offered to make an immediate curative instruction to the jury. Defense counsel then requested that the court instead give the curative instructions along with the rest of the jury instructions at the end of the trial.

Sergeant Shaffer's two comments were not so prejudicial as to warrant a mistrial. Indeed, the comments might not have been prejudicial at all. Wimbley was charged with selling crack cocaine to Jones on three separate occasions, so the jury could have easily interpreted Shaffer's references to "numerous" and "so many" purchases as referring to nothing more than the charged incidents. In fact, defense counsel minimized the chance for confusion when he clarified directly after the "so many buys" comment that "we're talking about three purchases."

Wimbley's failure to accept the district court's offer of an immediate curative instruction also undercuts his argument that the comments compromised the integrity of the trial. The court's instructions to the jurors at the end of the trial clarified that Wimbley was on trial only for the three crimes charged in the indictment and that each charge must be proven beyond a reasonable doubt. Because Sergeant Shaffer's comments could have done no more than temporarily confuse the jury as to which purchases were being discussed, the comments did not prejudice Wimbley. In sum, the district court did not abuse its discretion in denying Wimbley's motion for a mistrial based on Shaffer's comments.

**C.    The prosecutor's comments in rebuttal argument did not warrant a mistrial**

Wimbley next contends that he was prejudiced by the prosecutor's argument that the defense had the opportunity to test for fingerprints or DNA, but did not do so. He claims that this argument violated his Fifth Amendment privilege against compelled self-incrimination. *See United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981) ("A prosecutor who attempts to define exactly the line between proper comment on . . . impeachment by cross-examination and improper comment on [the] failure of [the] accused to testify or present a defense does so at his peril.") (quoting *United States v. Hooker*, 541 F.2d 300, 307 (1st Cir. 1976)).

This court employs a two-step inquiry in deciding whether prosecutorial misconduct has occurred. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). First, we must determine whether a statement by the prosecutor was improper. *Id.* If the statement was improper, we must next decide whether the statement was so "flagrant" as to warrant reversal. *Id.*

The district court correctly found that the prosecutor's rebuttal argument was a legitimate response to Wimbley's closing argument and not an improper attempt to shift the burden of proof. Several decisions by this court are instructive on this point. One is *United States v. Newton*, 389 F.3d 631 (6th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005), where the defense asserted that the government had withheld an audiotape from the jury. The prosecutor responded by arguing that Newton could have played the audiotape for the jury if he deemed it crucial to the case. *Id.* at 635. This court held on appeal that the prosecutor's argument was a fair response to the defense's assertions, which "opened the door to [the] rebuttal." *Id.* at 638. Likewise, in *United States v. Hunt*, 278 F. App'x 491 (6th Cir. 2008), the defendant had insinuated in testimony that the government was deliberately withholding evidence from the jury. *Id.* at 497. The prosecutor reacted by initiating the following exchange:

> PROSECUTOR:    Mr. Hunt, you have got good attorneys, right? And if you think there is other evidence you need to get in, that's kind of your job, right?
>
> DEFENDANT:     Yes . . . .

PROSECUTOR:          I don't want you to try to suggest to the jury that there's this other stuff no one is talking about.

*Id.* at 496.

This court, addressing Hunt's argument that the comment of the prosecutor amounted to misconduct, held that the comment

> was invited by and responsive to defendant's testimony. Read in context, it is clear that the prosecutor's remarks were not intended to shift the burden of proof or otherwise mislead the jury or prejudice the defendant. They were intended simply to dispel the notion, suggested by defendant, that the government had improperly withheld information. The remarks were not improper and do not constitute prosecutorial misconduct.

*Id.* at 497*; see also United States v. Clark*, 982 F.2d 965, 969 (6th Cir. 1993) (holding, where defense counsel argued that the prosecution had not presented the testimony of a law enforcement agent because it would have been favorable to the accused, the prosecutor properly argued, in rebuttal, that Clark could have called the agent as a witness on his own). As in the cases cited above, the prosecutor's comments here were a proper response to defense counsel's statements that the government had not performed proper testing of the evidence.

Because the prosecutor's statement was not improper, there is no need for us to evaluate whether it was flagrant. We accordingly reject Wimbley's claim of prosecutorial misconduct. In sum, whether viewed individually or collectively, the statements of Sergeant Shaffer and the prosecutor underlying Wimbley's two motions for a mistrial did not warrant a grant of those motions.

Wimbley also argues for the first time on appeal that the prosecutor improperly mentioned Wimbley's flight during the government's rebuttal closing argument. Specifically, the prosecutor posed the question to the jury: "[W]hy did Russell Wimbley run away, run [500] or 600 yards away from these officers when he was told he was under arrest for no reason?" Wimbley asserts that this statement was prejudicial and warranted a special jury instruction. He did not, however, object to this statement below, raise it in a motion for retrial, or request that the district court give the jury instruction that he now claims was essential. Accordingly, we will review this claim under the plain-error standard. *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004).

This court has recognized that a defendant's flight is evidence allowing an inference of guilty knowledge. *United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995). Wimbley has not shown that the prosecutor's single mention of his flight—which the jurors were already aware of due to evidence presented earlier in the trial—constituted error or affected the proceedings in any way. This belated argument therefore lacks merit.

**D.      The mandatory life sentence set forth in 21 U.S.C. § 841(b)(1)(A) is constitutional**

Wimbley next presents four arguments for why his sentence of life imprisonment, as mandated by 21 U.S.C. § 841(b)(1)(A), is unconstitutional. First, he claims that *Kimbrough v. United States*, 128 S. Ct. 558 (2007), which was decided after his sentence was imposed, entitles him to a shorter sentence. *Kimbrough* addresses a district court's discretion under the Sentencing Guidelines, and explicitly allows the sentencing court to take into account the Guidelines' disparate treatment of crack versus powder cocaine. *Id.* at 564. But *Kimbrough* is inapposite here because Wimbley's sentence was set by a statutory mandatory minimum, not the advisory Sentencing Guidelines.

Second, Wimbley contends that the officers violated his rights by directing Jones to purchase quantities of crack cocaine that would exceed § 841(b)(1)(A)'s 50-gram threshold for the statutory life sentence. Wimbley reasons that this precluded the district court from considering his unique circumstances, such as his alcohol and drug addiction, the fact that he did not have a firearm or contraband when he was arrested, and his lack of prior convictions for crimes of violence. He cites no caselaw to support this somewhat novel argument, instead implying that the officers' conduct and the resulting mandatory sentence somehow run afoul of *Kimbrough*. But as stated above, *Kimbrough* does not apply to the sentence in this case. Furthermore, there is no doubt that Congress has authority to limit judicial discretion, or even eliminate it altogether, by imposing mandatory minimum sentences. *United States v. Dumas*, 934 F.2d 1387, 1389-90 (6th Cir. 1990).

Wimbley's third argument is that § 841 violates his right to the equal protection of the law under the Fifth Amendment because the quantity of crack cocaine that triggers the mandatory life sentence is significantly lower than the quantity for powder cocaine, and because the majority of the individuals convicted of offenses involving crack cocaine are black. This court has previously considered and rejected this equal-protection argument.

*See United States v. Hill*, 79 F.3d 1477, 1488 (6th Cir. 1996) ("This circuit has repeatedly found that the challenged provision of section 841(b) does not violate equal protection guarantees under the Fifth Amendment.") (collecting cases).

Finally, Wimbley claims that his life sentence is cruel and unusual punishment, in violation of the Eighth Amendment. But a sentence is not cruel and unusual simply because it is mandatory. *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) (holding that a mandatory life sentence for cocaine possession is "not unusual in the constitutional sense"). In fact, this court specifically held in *United States v. John Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994), that the mandatory minimum life term for certain drug offenders set forth in § 841(a)(1)(A) does not constitute cruel and unusual punishment. Wimbley does not attempt to distinguish his case from *Hill*, and his argument on this point should accordingly be rejected. *See United States v. Caver*, 470 F.3d 220, 247 (6th Cir. 2006) (rejecting as meritless an Eighth Amendment claim that failed to differentiate *Hill*).

In sum, all four of Wimbley's arguments regarding the constitutionality of his sentence lack merit. We therefore decline to set the same aside.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.