NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0270n.06

No. 10-3781

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Mar 12, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| DENNIS KING, | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |

BEFORE:    DAUGHTREY, MOORE and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**    Defendant-Appellant Dennis King was convicted of possession to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count 1"), possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count 2"), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("Count 3").  On appeal, King alleges three errors.  We **AFFIRM.**

## I. BACKGROUND

On July 28, 2009, Lakewood Police Detectives Terry Miller and John Guzik were in a Detective Bureau vehicle on a "sexual registration follow up." R. 53, Suppression Transcript, p. 20. Detective Guzik observed a black Cadillac driven by a large African-American man in his fifties pass through the intersection of Detroit Road and Clarence Avenue. *Id.*  Guzik testified that the driver matched a reliable confidential source's description of an individual suspected of drug activity at an

apartment on Clarence Avenue. *Id.* at 16-17. Further, Clarence Avenue was "deemed a high-drug location within [Lakewood]." *Id.* at 19. Because Guzik and Miller were in a bureau car, Guzik exited the vehicle, asked Miller to drive away, "and proceeded to do a foot surveillance just to see where this vehicle was going or what might happen at that point in time." *Id.* at 20.

The Cadillac subsequently parked "along the east curb, probably 50 feet north of Detroit Avenue." *Id.* Guzik observed the driver sit in the Cadillac from approximately 40 yards away. *Id.* The driver remained in the vehicle for approximately three minutes before exiting the Cadillac, at which point the driver stood by his Cadillac's open door and looked around for twenty to thirty seconds. *Id.* at 22. Guzik watched the driver cross the street while "constantly looking in all directions." *Id.* at 23. The driver entered the suspect apartment building on Clarence Avenue and remained inside for four minutes. *Id.* at 26. When the driver emerged from the building, he returned to his car. *Id.* at 26-27.

Guzik believed that the driver matched the physical description given by the confidential informant. *Id.* at 22-23. Guzik also considered the driver's brief visit to the Clarence Avenue on the apartment to be indicative of a drug sale based on his training and experience. *Id.* at 22. Accordingly, Guzik intended to stop the driver based on "[r]easonable and articulable suspicion." *Id.* at 27. Consequently, Guzik arranged for a uniformed officer to proceed to the area to provide assistance while he continued to monitor the situation. *Id.*

The individual in the Cadillac then began to drive away, *Id.* at 28-29, and Guzik — still on foot — returned to Miller's vehicle. *Id.* at 29. Guzik and Miller followed the Cadillac in their bureau car as it proceeded eastbound on Detroit Avenue. *Id.* at 29. By this point, Guzik's back-up

had arrived, and Lakewood Police Officer Romanello was driving immediately behind the Cadillac, followed by Lieutenant Ciresi's vehicle. *Id.* When the Cadillac reached the border of the City of Lakewood and the City of Cleveland, Ciresi instructed Romanello to stop the vehicle. *Id.* Because Romanello wanted to avoid stopping the vehicle at "a very busy intersection," Romanello waited to activate his flashing light until the cars were one city block inside of Cleveland, and the Cadillac immediately pulled over. *Id.* at 63-64.

Romanello approached the driver and obtained his driver's license. *Id.* at 66. The license identified the driver as Dennis King. *Id.* at 66-67. While Romanello was running King's license, Romanello heard "squealing tires, looked up and the vehicle fled from the stop." *Id.* at 68.

Romanello conducted a high-speed chase of King's vehicle until King's Cadillac crashed into another car. *Id.* at 69-72. During the chase, Romanello witnessed King commit the following violations, all of which were also recorded by the dashboard camera in Romanello's vehicle:

> (1) failure to use a turn signal before pulling from the curb;
> (2) operating a vehicle to the left of the center line and into oncoming traffic;
> (3) failure to stop at a red traffic light;
> (4) exceeding seventy miles per hour in a twenty-five miles per hour zone;
> (5) operating a vehicle in a reckless manner or with willful, wanton disregard for the safety of others;
> (6) fleeing the scene of an accident;
> (7) felony flight from the police.

Appellee Br. at 11; *see also* R. 55 at 69-72. When Romanello arrived at the scene of the accident, he observed King fleeing on foot. R. 55 at 73. Romanello chased King on foot while another officer arrived and attempted to block King with his vehicle. *Id.*

- 3 -

Once King was caught, he was arrested for felony fleeing and eluding. *Id.* at 39. Detectives Guzik and Miller searched King incident to his arrest and uncovered 101 individually wrapped rocks of crack cocaine weighing approximately thirty-two grams, a cellular phone, and approximately $250.00. *Id.* at 40. Guzik then returned to King's Cadillac and, on the ground near the vehicle, found a brown paper bag that contained a black bag with 139 unit doses of heroin which exceeded 60 grams in weight. *Id.* at 41. Finally, Guzik observed a loaded .380 semi-automatic Beretta pistol unobstructed from view on the floorboard of the passenger's front seat. *Id.* The police seized the evidence. *Id.*

On August 19, 2009, King was charged with possession to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). R. 7, Indictment. On October 6, 2009, King filed a motion to suppress the evidence, claiming that the crack cocaine, heroin and firearm were obtained as the result of an illegal seizure "without probable cause in violation of his constitutional rights under the Fourth Amendment to the United States Constitution." R. 19, Motion to Suppress, p. 2. The Government filed both a response and a supplemental response opposing King's motion. *See* R.22; R. 23. In its responses, the Government argued that the first stop was justified by reasonable suspicion that King was involved in criminal activity. Additionally, the Government argued that "[a]ssuming *arguendo* that . . . the initial stop was not based on reasonable suspicion, any taint would have dissipated when King fled the scene and proceeded to commit numerous law violations." R. 22, pp. 11-12. The district court denied King's motion to suppress after finding that, although the initial traffic stop was

not supported by reasonable suspicion, King's intervening decision to flee the scene and break numerous laws —all witnessed by police — provided probable cause for his subsequent arrest and search. R. 24, Opinion and Order, pp. 7-12. King filed a motion for reconsideration of the district court's denial of his motion to suppress, and the government filed its response in opposition. *See* R. 26, Motion for Reconsideration; R. 28, Government Response. The district court again denied King's motion to suppress. R. 29, Order.

On December 15, 2009, a superceding indictment was filed containing the same three counts but amending the quantity of the drugs. R. 31, Superceding Indictment. King pleaded guilty to all three counts pursuant to a plea agreement. R. 42, Plea Agreement. King's plea agreement contained an appellate waiver provision that reserved his right to appeal: (1) any punishment in excess of the statutory maximum; (2) any sentence higher than the advisory Sentencing Guideline range deemed applicable by the court; and (3) the denial of his motion to suppress. *Id.* at 7. After the district court accepted King's guilty plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). On May 14, 2010, King objected to the PSR on the following grounds: (1) the PSR's recommendation that he receive a two-level increase for obstruction of justice; (2) the PSR's inclusion in his criminal history of a fifth-degree felony over ten years old; and (3) the enhancement for possession of a firearm. R. 46, Objections to the Presentence Report.

At sentencing, however, King withdrew his objections after the parties stipulated to a base offense level of 24 rather than the PSR's recommended base level of 28. R. 55, Sentencing Transcript, pp. 2-3. The district court then determined the base offense level of 24 should be increased by four levels: two for possession of a dangerous weapon pursuant to U.S.S.G. §

2D1.1(b)(1), and two for recklessly creating a substantial risk of death or serious bodily injury while fleeing from a police officer pursuant to U.S.S.G. § 3C1.2. *Id.* The district court then applied a downward adjustment of three levels for King's acceptance of responsibility, thereby arriving at an offense level 25 with a criminal history category IV. *Id.* at 3-4. Although King's advisory sentencing range was 84 to 105 months, Count 1 carried a mandatory minimum sentence of 120 months. Accordingly, the district court sentenced King to the mandatory minimum of 120 months' imprisonment followed by an eight-year term of supervised release, a $300 assessment and a $1,000 fine. *Id.* pp. 9-10. King timely appealed. R. 48, Notice of Appeal.

On appeal, King asserts three errors. First, King argues that the district court erred by denying his motion to suppress. Second, King contends the district court abused its discretion by imposing a $1,000 fine. Finally, King argues that his 120-month sentence is procedurally and substantively unreasonable.

## II. ANALYSIS

### A. KING'S MOTION TO SUPPRESS

When reviewing a district court's determination on a motion to suppress, this Court reviews the district court's findings of fact for clear error and its ultimate legal conclusion de novo. *See United States v. Al-Cholan*, 610 F.3d 945, 953 (6th Cir. 2010). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). Where, as here, "a district court has denied a motion to suppress, this Court reviews the evidence in the light most likely to

support the district court's decision." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009).

King appeals the district court's denial of his motion to suppress for two reasons. First, King asserts that the Lakewood City Police lacked jurisdiction to arrest him because the relevant criminal conduct occurred in Cleveland rather than Lakewood. Second, King argues that his arrest was insufficiently attenuated from the Lakewood Police's improper *Terry* stop.

King's first argument is unavailing because, even assuming the Lakewood City Police lacked jurisdiction to arrest King, jurisdictional defects do not amount to per se violations of the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164, 172 (2008) (explaining that the legality of a seizure under the Fourth Amendment "has never depended on the law of the particular State" in which the seizure occurs) (internal quotation marks omitted); *see also State v. Weideman*, 764 N.E.2d 997, 1001-02 (Ohio 2002) (holding that an officer's violation of Ohio's jurisdictional law did "not rise to the level of a constitutional violation").

King next argues that, because the Lakewood Police's initial *Terry* stop was improper, his subsequent arrest and search incident to arrest should be suppressed as "fruits of the poisonous tree." *See* Appellant Br. at 15; *see also Wong Sun v. United States*, 371 U.S. 471 (1963). In particular, King notes that there were "only a few minutes between the unlawful police activity and the defendant's actions. That lapse could not in any way dissipate the taint." Appellant Br. at 18.

Generally, "[i]n order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person," the United States Supreme Court requires that "evidence seized during an unlawful search [can] not constitute proof against the victim of the search" and must therefore be excluded from trial. *Wong Sun*, 371 U.S. at 484. There are, however,

exceptions to this exclusionary rule. Evidence obtained following an unlawful search or seizure will not be excluded if its discovery results from "an intervening independent act of a free will" sufficient to purge the primary taint of the unlawful invasion." *Id.* at 486.

In this Circuit, fleeing or otherwise resisting an unlawful search or seizure constitutes an intervening independent act of free will that purges the taint from the initial unlawful search or seizure. *See United States v. Allen*, 619 F.3d 518 (6th Cir. 2010) (finding that "it is widely recognized that if a suspect's response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the suspect for that crime") (internal alterations omitted). According, we find that the district court properly denied King's motion to suppress. The district court first held that Detective Guzik lacked reasonable suspicion to support his initial *Terry* stop of King's vehicle. R. 24, Order Denying Defendant's Motion to Suppress, p. 9. Nonetheless, the district court denied King's motion because "Defendant's flight cannot be said to have resulted from an exploitation of the illegality of the initial traffic stop, but was instead an intervening act of free will that is sufficient to purge the taint of the illegal stop." *Id.* at 11 (quoting *Wong Sun*, 371 U.S. at 488). Assuming without deciding that the district court's *Terry* stop holding was correct, we wholeheartedly agree with the district court's conclusion that King's flight constituted an intervening act that purged any taint from the initial traffic stop.

As the district court noted, "[d]uring the course of the high-speed chase that ensued from his flight, the Defendant committed numerous violations, including felony fleeing, which . . . provided probable cause for arrest." *Id.* at 12. Accordingly, "the evidence collected post-flight need not be suppressed based upon the illegality of the initial traffic stop, so long as there was a legitimate basis

for its seizure following the capture and arrest of the Defendant subsequent to his flight." *Id.* When King was finally apprehended, he was arrested and the search incident to arrest uncovered approximately thirty-two grams of crack cocaine. *Id.* The district court found that because "the arrest of the Defendant was lawful, the evidence recovered from his person was lawfully obtained and need not be suppressed." *Id.* We agree.

**B.      THE $1000 FINE**

King next argues that the district court abused its discretion by fining King $1,000. In particular, King asserts that "[b]eing indigent[,] the court should not have imposed a fine," and that doing so violated 18 U.S.C. § 3572(a). Appellant Br. at 18.

This Court reviews the district court's factual finding as to whether King is capable of paying a fine for clear error. *United States v. Hickey*, 917 F.2d 901, 906 (6th Cir. 1990). The United States Sentencing Guidelines provide that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(d). Section 3572 provides that: "In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)," eight additional factors, including: the defendant's income; the burden the fine will impose upon the defendant; pecuniary loss inflicted upon others as a result of the offense; and the expected costs to the government of imprisonment. 18 U.S.C. §3572(a). This Court's gloss on the §3752(a) factors requires the district court to assess: "(1) the defendant's income and earning capacity, (2) his financial resources, (3) the burden on the defendant and his dependants, (4) whether restitution is ordered and the amount of restitution, (5) the need to deprive the defendant

of illegal gains, and (6) the need to promote respect for the law." *United States v. Jackson-Randolph*, 282 F.3d 369, 387 (6th Cir. 2002). Ultimately, "the defendant has the burden of establishing that he or she is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine." *United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994); *see also United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001).

Because King's total offense level was 25, his Guidelines fine range was between $10,000 and $100,000. *See* § 5E1.2(c)(3). At sentencing, the court acknowledged that King "doesn't have the ability to pay a fine, a guideline fine. However, because of the length of the sentence and the fact that Mr. King can participate in the Bureau of Prisons' Financial Program, I am going to impose a $1,000 fine." R. 55, Sentencing Transcript, p. 10. In doing so, the district court implicitly considered the 3752(a) factors. Further, King failed to satisfy his burden of proving that he is unable to pay his below-Guidelines fine; aside from asserting his indigence, King never addresses the district court's point that King can work off his fine through the Bureau of Prisons' Financial Program. Consequently, even though the district court didn't explicitly walk through each of §3752(a) factors, King's argument is unavailing.

## C. KING'S SENTENCE

King argues that the district court erred by "imposing what it believed to be a mandatory sentence . . . without consideration of the § 3553 factors." Appellant Br. at 20. Toward that end, King relies on the dissent in *United States v. Franklin*, which reasoned that "the district court should be able to consider the mandatory seven-year sentence for brandishing a firearm in violation of 18 U.S.C. § 924(c) when the court evaluates the 18 U.S.C. § 3553(a) factors in fashioning the additional

appropriate sentence to be imposed for the other counts of conviction." 622 F.3d 650, 658 (6th Cir.

2010) (Moore, J., dissenting), *vacated on other grounds*, 131 S.Ct. 1675 (2011).

This Court reviews a district court's sentence for procedural and substantive reasonableness

under the deferential abuse of discretion standard. *See, e.g.*, *United States v. Alexander*, 543 F.3d

819, 821 (6th Cir. 2008). A sentence is procedurally unreasonable if, inter alia, the district court

failed to properly calculate the Guidelines range, treated the Guidelines range as mandatory, failed

to consider § 3553(a) factors, used clearly erroneous facts in imposing the sentence, or failed to

adequately explain the sentence. *Id.* at 822. A sentence is substantively unreasonable if the district

court arrives at a sentence arbitrarily, uses impermissible sentencing factors, fails to consider relevant

sentencing factors, or gives unreasonable weight to any one factor. *United States v. Baker*, 559 F.3d

443, 448 (6th Cir. 2009).

Section 3553(a) factors do not apply to mandatory minimums in the Sixth Circuit. *See, e.g.*,

*United States v. Penney*, 576 F.3d 297, 317 (6th Cir. 2009) (holding that "§ 3553(a) factors do not

apply to congressionally mandated sentences"); *United States v. Simpson*, 546 F.3d 394, 397 (6th

Cir. 2008) (observing that "a sentencing court must determine an appropriate sentence for the

underlying crimes without consideration of the mandatory sentences for firearm offenses"); *United

States v. Lockett*, 359 Fed. App'x 598, 611 (6th Cir. 2009) (recognizing that sentencing courts are

"constrained by the mandatory minimums Congress prescribed"); *United States v. Wimbley*, 553 F.3d

455 (6th Cir. 2009) (observing that while *Kimbrough v. United States*, 552 U.S. 85 (2007), explicitly

allows the sentencing court to take into account the Guidelines' disparate treatment of crack versus

powder cocaine, *Kimbrough* is inapposite where the sentence is set by a statutory mandatory minimum rather than subject to the advisory Sentencing Guidelines).

Because the district court was not allowed to consider the § 3553(a) sentencing factors to arrive at a sentence less than the mandatory minimum, King's sentence is both procedurally and substantively reasonable.  Procedurally, the district court correctly calculated King's 120-month mandatory minimum sentence pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) with an enhancement under 21 U.S.C. § 851.  Further, King ignores the extensive Sixth Circuit case law that makes clear that 3553(a) factors do not apply to mandatory minimums.  Accordingly, we find no error in the district court's sentence.

## III.  CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** King's conviction and sentence.