NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0251n.06

No. 16-1773

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
May 02, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GINO LITTLES,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**BEFORE: SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** A jury convicted defendant-appellant Gino Littles of two counts of carjacking, 18 U.S.C. § 2119(1), two counts of using and carrying a firearm during a crime of violence, 18 U.S.C. § 924(c), and one count of felon in possession of a firearm 18 U.S.C. § 922 (g)(1). Littles appeals, arguing that the district court erred in admitting evidence as res gestae; the Government's injection of "other bad acts" evidence deprived Littles of a fair trial; and certain of the Government's statements during the trial constituted prosecutorial misconduct. We **AFFIRM**.

## I. Background

This case arises out of a series of robberies committed between the evening of March 18, 2014, and the early morning hours of March 20, 2014. The Government's theory is that on March 18, defendant-appellant Littles and co-defendant Sherrod Houston robbed two persons at

gunpoint outside the Spotlight Liquor Store in Detroit,[1] and stole a pair of expensive Cartier sunglasses, among other items. On March 19, Houston, who was wearing the Cartier sunglasses, and Littles visited co-defendant Vercell Coney. After Houston explained to Coney that he acquired the sunglasses through the March 18 robbery, Coney stated that he wanted to participate in future robberies; Coney then purchased a firearm for this purpose.

During the evening of March 19, Houston and Littles stole a Chevrolet Camaro to use in that night's robberies. After assisting in stealing the Camaro, Houston decided not to participate further in the March 19 robberies. Littles picked Coney up in the Camaro, but Coney refused to use the Camaro in the robberies because it was loud and smelled strongly of gasoline. Littles and Coney abandoned the Camaro and instead stole a white minivan. They drove the white minivan to Spotlight Liquor Store and robbed someone, but only obtained $9.00 from the victim. Littles and Coney then drove to a gas station and stole two cars at gunpoint, a Jeep and a Chevrolet Impala. They abandoned the Impala, but stashed the stolen Jeep in a motel parking lot.

On March 20, Coney and Littles located a buyer for the Jeep and offered Houston, the only one of the three with a driver's license, $200 to drive the Jeep to the buyer. Coney and Littles followed Houston in a car driven by Coney's girlfriend. However, the Detroit Police had been surveilling the Jeep and arrested Coney, Littles, and Houston on the drive to the buyer.

For the gas station robbery, Littles and Coney were each charged with two counts of carjacking, 18 U.S.C. § 2119(1), and two counts of using a firearm during a crime of violence, 18 U.S.C. § 924(c). By superseding indictment, Littles was also charged with being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Houston was charged as an accessory-after-the-fact. 18 U.S.C. § 3. Houston and Coney pleaded guilty and agreed to testify against Littles.

---

[1] Neither Houston nor Littles has been charged with this robbery.

At Littles's jury trial, Houston and Coney testified consistently with the above narrative. The jury returned a verdict of guilty on all counts, and the district court imposed a sentence of 408 months of imprisonment, consisting of 24 months' concurrent imprisonment on the two carjacking counts and the felon-in-possession count (below the bottom of the Guidelines range of 130 months' imprisonment for those counts), 84 months' consecutive imprisonment on the first § 924 (c) count (the statutory mandatory minimum), and 300 months' consecutive imprisonment on the second § 924 (c) count (the statutory mandatory minimum).

On appeal, Littles argues that the district court erred in admitting evidence of the March 18 robbery committed by Littles and Houston. Littles further argues that he is entitled to a mistrial due to prosecutorial misconduct and the Government's injection of "other bad acts" evidence into the trial.

## II. Analysis

### A. Standard of review

Evidentiary rulings, including a district court's decision to admit evidence as res gestae, are reviewed for abuse of discretion. *United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005). A district court's decision not to grant a mistrial is also reviewed for abuse of discretion. *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994). Whether "statements amount to prosecutorial misconduct and whether they rendered the trial fundamentally unfair are mixed questions of law and fact and are therefore reviewed de novo." *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). However, improper remarks made by the prosecutor without objection are reviewed only for plain error. *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994).

### B. Res Gestae Evidence

Littles contends that the district court erred by allowing Houston and Coney to testify about the March 18 robbery and carjacking. The district court, after determining that this evidence was not admissible under Federal Rule of Evidence 404(b), concluded that it was intrinsic to the crime and thus admissible as res gestae evidence.

Res gestae or "background" evidence is admissible when it is "inextricably intertwined with the charged offense." *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012) (internal quotation marks omitted). Res gestae evidence must have a "causal, temporal or spatial connection with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). This includes "evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015), *reh'g denied* (Oct. 23, 2015) (quoting *United States v. Grooms*, 566 Fed. App'x. 485, 491 (6th Cir. 2014)). Prosecutors are permitted to provide the jury with a "natural narrative of events," and are not limited to a "sanitized recounting of the facts." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) (internal quotation marks omitted). However, res gestae is "not an open ended basis to admit any and all other act evidence the proponent wishes to introduce." *Hardy*, 228 F.3d at 748 (holding that the district court abused its discretion in admitting testimony of drug transactions occurring six years before the date of the charged conspiracy that involved different parties than those named in the conspiracy); *see also Gibbs*, 797 F.3d at 423 ("Retaliation that occurred one month after the shooting is not at all necessary to determine whether Defendant possessed ammunition at that earlier time.").

Here, the challenged evidence consists of Coney's testimony that on March 19, Houston went to Coney's mother's apartment to receive a hair cut from Coney; that Littles accompanied Houston on this outing; and that Houston was wearing high-end Cartier glasses that Houston and Littles had stolen. It also includes Houston's more specific testimony that on March 18, he and Littles committed an armed robbery outside the Spotlight Liquor Store using a .25 caliber handgun; that Houston had handled the gun during the robbery; that they had driven to Spotlight Liquor Store in a stolen Dodge Durango; and that they obtained a pair of expensive Cartier glasses from the victim. The Government made a motion in limine for admission of this testimony, and the district court found that testimony regarding the March 18 car theft and the subsequent armed robbery was "intrinsic to the crime; interconnected, intertwined, interrelated as part of an ongoing sort of series of activities that the jury is entitled to know the entire story of[.]" R. 104, PID 588.

This court's decision in *Churn* is instructive. In *Churn*, the defendant, the owner of a construction company, had been convicted of seven counts of bank fraud arising from his receipt of bank loans to construct houses and his subsequent failure to perform the work. 800 F.3d at 771. On appeal, the defendant argued that the district court abused its discretion by "admitting evidence about a real-estate deal that did not underlie his charged offenses." *Id.* at 777. The challenged real-estate deal involved an investor that had participated in one of the charged real-estate transactions, and the uncharged deal was "set up the same" as the charged transaction. *Id.* at 779. This court affirmed the district court, holding that the testimony about the unindicted transaction was res gestae because it "explain[ed] the relationship between the witness and the defendant and the nature of their business relationship and the course of their business dealings" and was "closely related in both time and nature to the crime charged." *Id.* at 779.

Like the evidence in *Churn*, the testimony about the March 18 robbery explained the relationship between Coney, Houston, and Littles, and how they were involved in the charged conduct. The conduct on March 18 was also closely related in nature to that on March 19—both were largely unplanned, involved two robbers, and utilized handguns and stolen cars in the commission of the robberies. It is immaterial that the cars and handguns used on each night were different, as "we only require that the facts are 'closely related.'" *Id.* (finding it immaterial that the uncharged real-estate deal, unlike the charged transactions, did not involve a bank loan). Additionally, the res gestae evidence possesses a temporal proximity to the charged carjackings; the March 18 robberies occurred the night prior to the charged offenses. *See Clay*, 667 F.3d at 698.

Finally, the district court did not abuse its discretion in finding that the probative value of the testimony was not substantially outweighed by its potential for unfair prejudice. Fed. R. Evid. 403. "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008) (quoting *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006)). The March 18 testimony was a small portion of the evidence offered against Littles and did not include inflammatory statements likely to unfairly prejudice the jury. Since the evidence "completes the story of the charged offense[s]," *Churn*, 800 F.3d at 779, and its probative value is not substantially outweighed by its prejudicial impact, the district court did not abuse its discretion in admitting the evidence.

## C.  Other Bad Acts Evidence

Littles also argues that the district court should have granted a mistrial because of improper testimony given during the Government's direct examination of Houston.  The entirety of the challenged exchange is as follows:

> [Government:]  Is [the Cartier glasses robbery] the only robbery that you did that night with the defendant?
> [Houston:]  No.
> [Government:]  You did one other?
> [Houston:]  Yes.

R. 109, PID 1487.  Littles immediately moved for a mistrial.  Although the district court noted that the testimony was a surprise and not the subject of a motion in limine, it nevertheless denied the motion and issued a curative instruction:  "Ladies and gentlemen, I'm going to instruct you to disregard counsel's question concerning what happened after the incident at the Spotlight Liquor Store with the Cartier glasses.  Put it out of your mind entirely, okay?"  R. 109, PID 1489.

A new trial should only be granted if the improper evidence was so prejudicial "that the jury could not be trusted to disregard it."  *United States v. Ursery*, 109 F.3d 1129, 1134 (6th Cir. 1997).  "The primary concern is fairness to the defendant."  *United States v. Forrest* 17 F.3d 916, 919 (6th Cir. 1994).  We consider five factors in determining whether to grant a mistrial due to improper testimony:  "(1) whether the remark was unsolicited; (2) whether the government's line of questioning was reasonable; (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant."  *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003).

Assuming that the statements were improper, the first two factors favor Littles.  The Government intentionally solicited the challenged testimony, and, given that the testimony was

outside the scope of the Government's motions in limine and was a surprise to both Littles and the district court, the line of questioning was not reasonable. The questioning did not violate any specific instruction from the district court, and it is thus unclear whether it was done in bad faith. *See, e.g., Forrest*, 17 F.3d at 921 (finding bad faith when the testimony "directly contravened the judge's specific warning, which he had directed the prosecutor to convey to his witness"). The fourth factor is therefore a wash.

However, the district court issued an immediate and clear limiting instruction, and "[j]uries are presumed to understand and follow such directions from the court." *Id*. at 920–21. The third factor thus weighs strongly in favor of the Government. Moreover, the challenged testimony was brief—Houston uttered only two words—and it is doubtful that the outcome of the trial was affected by the improper statements; the fifth and final factor clearly weighs in favor of the Government. Thus, although the Government acted improperly in eliciting the challenged statements, the testimony did not deprive Littles of a fair trial.

### D. Prosecutorial Misconduct

Littles's final argument is that the Government improperly shifted the burden of proof at two points during the trial. "For the prosecutor's misconduct to be found to violate defendant's constitutional rights this court must determine that the prosecutor's actions so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir. 1999) (internal quotation marks omitted). We use a two-part test to determine whether a prosecutor's conduct warrants a new trial. *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008). First, we must decide whether the challenged conduct was improper. *United States v. Warshak*, 631 F.3d 266, 302 (6th Cir. 2010). Then, if the conduct was improper, we employ a four-factor test to determine whether the impropriety was flagrant and mandates

reversal. *Id*. The four factors include: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id.* quoting *Cristini*, 526 F.3d at 899. Finally, if conduct is improper but not flagrant, we will only reverse a conviction if (1) proof of the defendant's guilt is not overwhelming; (2) defense counsel objected to the conduct; and (3) the trial judge did not cure the impropriety through an admonishment to the jury. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

First, Littles challenges the Government's cross-examination of Julianne Cuneo, a private investigator hired by Littles. On direct examination, Cuneo testified that she had been hired to investigate the phone records from March 19 and March 20 of phone numbers associated with Coney and Littles. This was relevant to corroborate testimony that Coney and Littles had called Houston—via Houston's girlfriend's phone—for a ride after committing the charged carjackings. Cuneo was provided with telephone logs for three phone numbers that had been identified by the Government as belonging to either Coney or Littles, and used grand jury testimony and FBI 302 reports to determine which phone number was associated with each defendant.[2]

Cuneo testified that she did not find Houston's girlfriend's phone number in the call logs of either Littles's or Coney's phones; Littles offered the lack of evidence of phone calls made or received on his phone to create reasonable doubt as to whether it was Houston, rather than

---

[2] The identities of the owners of the different phone numbers was the subject of much debate at trial. Two phones associated with Vercell Coney were recovered from Coney's girlfriend's car after the co-defendants were arrested. The rest of the phone numbers were identified through witness testimony and the owners of the various phone numbers were disputed. Littles contended that the Government was "guessing" as to the identities of the phone numbers because "[t]hey don't have any records." R. 112, PID 2081.

Littles, who committed the March 19 robberies. On cross-examination, the Government asked Cuneo if she had interviewed Houston's girlfriend and if she had subpoenaed the phone company regarding the phone numbers associated with Houston's girlfriend. After Cuneo stated that she had not sent out subpoenas, the Government asked: "You recognize that through [defense counsel] you have subpoena powers, correct?" R. 111, PID 1995. After Cuneo answered affirmatively, the Government asked: "And you recognize that you can use those subpoena powers just like the Government can[?]" R. 111, PID 1994.

Littles did not object to this line of questioning but now argues that these questions improperly suggested that he had an obligation to affirmatively prove his innocence. Since Littles failed to object to the Government's cross-examination of Cuneo, we review this claim for plain error. *Carroll*, 26 F.3d at 1383. The district court did not plainly err in permitting the cross-examination. Littles called Cuneo to offer substantive testimony about the call logs, and the Government's questioning was directed at discrediting this testimony by questioning the thoroughness of Cuneo's investigation. The Government did not suggest that Littles had an obligation to produce this, or any, evidence.

Similarly, Littles challenges the Government's conduct during its closing statements. There, the Government stated: "He also talks about [how] we don't have the defendant's phone records. But you heard the testimony. Both parties have subpoena powers . . . You know who's sitting at that table right there? The defense counsel has the same subpoena powers I do." R. 112, PID 2105. Littles objected to this argument as improperly shifting the burden of proof, and the district court sustained the objection and issued a curative instruction:

> Remember, ladies and gentlemen, my instruction. The Government has the burden of proof from the very beginning of the case right to the very end of the case. The defendant has no burden to prove anything to you. . . . In truth, the

defendant has no obligation to present evidence at all. They can, they might, if they wish.

R. 112, PID 2106. However, the district court reversed course in its opinion denying Littles's motion for a judgment of acquittal or for a new trial. There, the district court found that Littles had invited the Government's statements by stating that the jury "can find reasonable doubt based on evidence or the lack of evidence." R. 112, PID 2101. Littles had further asked the jury, "[w]ouldn't you like to know if cell tower information showed Gino Littles' phone was not in that vehicle? I wish I had [it] to give it to you. We don't have it. The Government has not presented it." R. 112, PID 2102. Since the Government's statements were made in response to Littles's implication that the Government intentionally withheld the phone record evidence, the district court concluded that the Government did not improperly shift the burden to the defense.

The district court correctly determined that the Government's statements about the defense's ability to subpoena phone records were not improper. While the Government is not permitted to suggest that the defendant bears the burden of proving his or her innocence, the Government may state that the defense has the power to introduce evidence when "the defense's assertions . . . opened the door to the rebuttal." *United States v. Wimbley*, 553 F.3d 455, 461 (6th Cir. 2009) (internal quotation marks and modifications omitted). In *Wimbley*, the defense counsel stated in his closing argument that the Government failed to prove its case because it did not conduct DNA or fingerprint testing on bags of crack cocaine that had been purchased from the defendant. *Id*. at 457–59. The Government responded that

> the Defendant didn't try to [have it tested] or have [the tests] done. The Defendant has the ability to have these things tested, too, for fingerprints and DNA. If it was such a big deal to him, why didn't he have it tested, if he thought it would help him?

*Id*. at 459.  This court found that the Government's statements "were a proper response to defense counsel's statements that the government had not performed proper testing of the evidence."  *Id.* at 462.  *See also United States v. Clark*, 982 F.2d 965, 969 (6th Cir. 1993) ("The government's rebuttal argument [that Defendant could have called the second agent as a witness] did not imply in any way that the burden of proof was on the defendant to prove his innocence. It was, instead, fair comment designed to meet the defense counsel's argument that the government omitted to call the second agent because he would have testified in favor of [Defendant].").

Here, the Government's statements regarding Littles's ability to subpoena the phone records did not improperly shift the burden of proof.  Littles opened the door to the Government's rebuttal by emphasizing the Government's failure to produce the phone records. In its response, the Government did not suggest that Littles had an *obligation* to produce any evidence in his favor, merely that Littles had the power to do so.  Moreover, the district court gave an immediate and forceful curative instruction, thus further assuring us that Littles was not deprived of a fair trial.  Since we find the Government's statements to have been proper, we need not reach the flagrancy analysis.

## IV. Conclusion

For these reasons, we **AFFIRM** Littles's conviction.